ALSTON, GDN., APPELLEE, *v.* ALSTON, GDN., ET AL., APPELLEES; ALSTON, APPELLANT.

[Cite as Alston v. Alston, 4 Ohio App. 2d 270.]

(No. 7582—Decided July 7, 1964.)

*Mr. Frank C. Shearer,* for plaintiff-appellee.
*Mr. Armand Hocker* and *Mr. Clarence G. Smith,* for appellant.

BRYANT, J. This is an appeal on questions of law from a judgment and final order of the Probate Court of Franklin

County. The proceeding was begun in that court by Coy T. Alston, guardian of the person and estate of Robert Gary Roberts Alston, a minor, with the filing of a petition by the guardian to sell real estate and determine heirship. The guardian is an appellee herein.

Named as defendants in the court below, either in the petition, the amended petition or by court order, were the guardian above referred to, the ward above referred to, the Columbus Savings & Loan Association, a financial institution, holder of a note and mortgage on the real property in question, the treasurer of Franklin County, Charles Saunders, guardian ad litem, and Marjorie A. Alston of Toledo, mother of Robert Gary Roberts Alston. The mother is the appellant herein.

The real estate which the guardian desired to sell was improved residential property described in the petition as 717 East Mound Street and 712-14 Engler Street, Columbus, Ohio. It appears that on August 22, 1946, Norman R. Alston, who was the father of Robert Alston, and his wife, Marjorie A. Alston, appellant, entered into a land contract for the purchase of the above-described real estate, the sellers being Harold B. and Leota F. Bachman, owners of the fee simple title to this property. The purchase price of the property was $6,000. The Alstons paid $1,000 down and agreed to pay the balance in monthly installments of $65, plus interest at five per cent.

Norman R. Alston died intestate on or about July 18, 1948, at the hand of his wife, Marjorie A. Alston. Mrs. Alston was indicted for the killing of her husband, subsequently pleaded guilty to murder in the second degree, and on October 28, 1948, was sentenced to imprisonment for life in the Ohio Reformatory for Women at Marysville, Ohio. She remained a prisoner there for approximately ten years, at the end of which she was released.

An administrator was appointed for the estate of Norman R. Alston, who in course of the administration made application for authority to transfer the entire interest of Norman R. Alston, namely, an undivided one-half interest in the said improved real estate, to the son, Robert Alston, the order to transfer being granted on or about November 29, 1949. The ward's paternal grandmother, Mary E. Alston, served as guardian of the person and estate of the minor from January 28, 1949, until

her death on January 16, 1961, at which time she was succeeded by Coy T. Alston, as successor-guardian, plaintiff-appellee herein.

It appears further that in a separate proceeding, being case No. 215537 filed on November 8, 1962, in the Franklin County Common Pleas Court, proceedings were begun by the city of Columbus and the state of Ohio to appropriate the above-described property for highway use and that Coy T. Alston, as guardian of Robert Alston, a minor, was named as a defendant and ultimately received in that cause a net amount of $14,118.29 for the above-described premises, and pursuant thereto the real estate has been conveyed to the city of Columbus and/or the state of Ohio pursuant to the condemnation proceedings above referred to. It appears further that Marjorie A. Alston was not joined as a defendant in the condemnation proceedings.

It appears also that Marjorie A. Alston received no assets whatsoever from the estate of her deceased husband and that no proceedings of any kind were instituted in any court to give effect to the provisions of Section 2105.19 of the Revised Code, entitled "Murderer not to benefit," which section reads in part as follows:

"No person finally adjudged guilty, either as principal or accessory, of murder in the first or second degree, shall inherit or take any part of the real or personal estate of the person killed * * *."

This statute has been upheld by the Supreme Court of Ohio and is applicable to that which otherwise would be taken by a surviving spouse as well as that which would be inherited under intestate succession. See *Bauman* v. *Hogue, Admr.* (1953), 160 Ohio St. 296, in which the syllabus reads as follows:

"By reason of the provisions of Section 10503-17, General Code [Section 2105.19, Revised Code], a husband, who has been finally adjudged guilty of murdering his wife, cannot take or receive anything which is provided for him as surviving spouse of such wife by the provisions of Section 10509-54, General Code."

The opinion in that case draws the distinction between property the title to which had vested before the commission of the crime and which is not affected by the statute last above cited and that which vests by virtue of the crime.

Other steps taken which have a bearing on the questions here involved are related in portions of the finding of facts and also a portion of the conclusions of law. Of the findings of fact, paragraphs 23 through 29 read as follows:

"23. That on August 23, 1951, the then guardian, Mary E. Alston, filed an action to sell a fractional interest of the ward in the real estate involved herein.

"24. That prior to October 9, 1951, the defendant, Marjorie Alston, was approached by the attorney for Mary E. Alston, guardian, to convey her fractional interest in the property in question in order to permit the guardian to borrow money in order to complete the purchase of said premises and also to make improvements thereon.

"25. That at the time of the execution of said purported deed, Marjorie Alston, was an inmate of a penal institution, to wit: The Women's Reformatory at Marysville, Ohio, where she served a term pursuant to a plea of guilty to second degree murder in the death of her husband, Norman R. Alston.

"26. That at said time, defendant, Mary Alston, was approximately twenty-five years of age and legally competent to execute a deed.

"27. That said instrument contained as grantee the words 'The Estate of Robert Gary Roberts Alston, Ward' both in the granting and habendum clause.

"28. That said instrument was filed for record May 23, 1952 in book 1680 of deeds, page 595, in the Recorder's Office of Franklin County, Ohio.

"29. That the action to sell the ward's fractional interest was dismissed as of January 25, 1952."

Paragraphs 3 through 7 of the conclusions of law read as follows:

"3. Under the theory of equitable conversion, Norman R. Alston and Marjorie Alston, each became owner of an undivided one-half (½) interest to said real estate under the land contract.

"4. On December 1, 1951 Marjorie Alston completely divested herself of any interest in the property.

"5. The deed from Harold B. Bachman and Leota F. Bachman transferred title to the one entitled thereto, Robert Gary Roberts Alston.

"6. The defendant, Marjorie Alston, was a competent person and executed a quitclaim deed to the ward on December 1, 1951.

"7. The interest Norman R. Alston had under the land contract, under the theory of equitable conversion, is held to be real property."

When the matter came on for hearing, counsel for the guardian relied upon the admissions in the pleadings as making a prima facie case and rested. Counsel for the appellant moved for a directed verdict in favor of the appelant on her cross-petition, which was overruled by the court below.

Counsel for the appellant then called two witnesses, one, being the attorney for the guardian, as upon cross-examination and the other the appellant. A number of exhibits were identified, offered and admitted in evidence, some of which will be referred to here in view of their importance in considering the issues here under consideration.

One of the exhibits offered on behalf of appellant was the quitclaim deed, executed by the appellant on or about December 1, 1951. This deed reads in part as follows:

"Quitclaim Deed

"Know all men by these presents: That Marjorie Alston, widow, of the city of Marysville, * * * does hereby remise, release and forever quitclaim to the said estate of Robert Gary Roberts Alston, Ward, his heirs and assigns forever, the following real estate, * * *.

"To have and to hold said premises, * * * to the said estate of Robert Gary Roberts Alston, Ward, his heirs and assigns forever * * *."

In her testimony, the appellant stated that the quitclaim deed was only conditionally given; that it was done for the purpose of permitting the guardian to obtain a mortgage on the premises; that she was not versed in law and was not aware of the significance of what she was doing; and that she was not provided with the advice of a lawyer of her own choosing. The court below rejected this contention.

Another exhibit offered on behalf of the appellant was a letter, dated October 9, 1951, addressed to the appellant, transmitting the quitclaim deed to her for her signature. This letter explains the purpose of the deed and states that appellant's

father had by letter informed the former guardian that appellant was willing to quitclaim appellant's interest in the property in favor of the estate of her minor son. This letter, omitting the heading and signature, reads as follows:

"Dear Mrs. Alston:

"Enclosed is the quitclaim deed for your interest in the property described therein and also known as 717 E. Mound Street. We are sending this to you in accordance with the letter sent to Mrs. Mary Alston, the guardian for Robert Gary Roberts Alston, the letter coming from your father, Mr. Russel McCown. The letter informed Mrs. Alston that you are ready to quitclaim your interest in the property to Mrs. Alston or to the Estate of Robert Gary Roberts Alston. We hope that you are determined to do this. If it had been done sooner, it could have saved cost and expense in a law suit. If you are willing to transfer your interest, the case can be disposed of and your interest will go to your son, and be used for his benefit, and under the supervision of The Probate Court of Frank [Franklin] County, Ohio.

"Please sign the deed on the back side thereof, at the X indicated on the right side and sign the same in the presence of two witnesses and have the deed acknowledged before some Notary or other qualified person. I would appreciate having this return to me as I am representing Mrs. Alston and the Estate of Robert Gary Roberts Alston. When this is done, we will have the same filed and dismiss the case accordingly."

As previously stated, the trial court held in favor of the guardian, plaintiff-appellee herein, and against the defendant-appellant, ordering the sale of the real estate in question and dismissing the cross-petition of defendant, from which judgment an appeal on questions of law was taken to this court.

The first assignment of error was that the court below erred in overruling the motion of the defendant for a directed verdict at the end of plaintiff's case. With this contention we do not agree. At that point in the proceeding, the guardian clearly had made a prima facie case in favor of his right to sell the property and that it was for the best interest of the ward to take this action. In the answer filed on behalf of defendant, it was admitted that it was for the best interest of the ward to sell the property and that the sale should go ahead.

All parties to this litigation recognized that the city of Columbus and the state of Ohio had begun proceedings to condemn this property for a public purpose and no one questions either the right of the public to acquire the property by condemnation or that the price offered was not fair and reasonable. The first assignment of error is not well taken and must be overruled.

The second and the fourth assignments of error both relate to the execution of the quitclaim deed by the appellant on December 1, 1951, and will be considered together. In the second assignment of error, it is contended that the court below erred in ruling that the quitclaim deed of December 1, 1951, "was an instrument of conveyance." In the fourth assignment of error, it is contended that the court below erred in ruling "that Marjorie Alston was a competent person to execute a quitclaim deed to the ward on December 1, 1951."

As to the second assignment of error, it is contended in substance that a deed must have a grantee, that the grantee must be either a real or an artificial person capable of receiving and accepting title, that the grantee in the quitclaim deed, "Estate of Robert Gary Roberts Alston, Ward, his heirs and assigns forever," is either a ficticious or a nonexistent person and hence the whole deed is void.

We believe that it is clear that a quitclaim deed, if otherwise valid, is a recognized, effective and valid instrument of conveyance. In 26 Corpus Juris Secundum 946, Deeds, Section 118, it is said:

"The title to real property may be as effectually conveyed or transferred by a quitclaim deed as by a warranty deed or any other form of conveyance. Such a deed will convey whatever title or interest the grantor may have in the land at the time it is given * * *."

As we understand the position of appellant, it is that if the words, "estate of," had been omitted from the description of the grantee, there would be as to this point no question as to the validity of the deed, but that the inclusion of these two words renders the deed void. We will agree that the ward is entitled to receive and hold title to property and that it would have been entirely proper and more correct to have described the grantee merely as Robert Gary Roberts Alston.

But does the use of the phrase, "estate of," before the

name of the ward create a ficticious estate or describe a grantee incapable of receiving and accepting the title to this property? We think not. The court below commented that defendant failed to cite any Ohio case upholding the contention here advanced.

If it be assumed that this phrase and the words which follow admit of more than one construction, (1) that it is an entity other than the ward or (2) that it refers only to the ward, the result will be the same, for in case of ambiguity as to the meaning, extrinsic evidence is admissible to show the surrounding circumstances and what the parties intended at the time.

In 17 Ohio Jurisprudence 2d 144, Deeds, Section 43, "Extrinsic Evidence to Identify Grantee," it is said in part as follows:

"* * * Likewise, a latent ambiguity in a deed as the person intended may be explained by extrinsic evidence. Thus, where there is a conveyance of land to a person by name, and there are two persons of the same name, evidence is admissible to show which one was intended."

Thus, the appellant herself caused the introduction of a letter which accompanied the quitclaim deed and which explained to appellant nearly two months before the signing of the deed that the document was "the quit-claim deed for your interest in the property described therein and also known as 717 E. Mound Street," and further "If you are willing to transfer your interest, the case can be disposed of and *your interest will go to your son,* and be used for his benefit * * *." (Emphasis added.) We conclude, therefore, that the second assignment of error is not well taken and must be overruled.

As to the fourth assignment of error, that appellant lacked the capacity to sign this deed, we find ourselves in agreement with the conclusions reached by the court below. Appellant's own testimony showed that she was a person at least of average, perhaps better than average, intellectual ability. She was a high school graduate, was 24 or more years of age when she signed the deed. Appellant introduced convincing testimony that the superintendent of the reformatory was alert in protecting the rights of appellant. This assignment of error is not well taken and must be overruled.

The third assignment of error that the court below erred

in holding that the Bachman deed conveyed appellant's interest to the ward also must be overruled for the reason that the Bachman deed was executed on September 22, 1952, approximately four months after the recording of appellant's quitclaim deed to her son, and in furtherance of the general plan to provide for the support of the child.

There remains the fifth assignment of error relating to the administration of the estate of appellant's deceased husband. The chief complaint appears to be that the statutory provision which keeps murderers from inheriting from those whom they murder (Section 2105.19, Revised Code) is not self-executing and that her husband's administrator should have brought some kind of proceeding to provide a judicial determination that it was applicable here.

The answer to that contention and also to the contention that she was never properly divested of her own undivided one-half interest is that on December 1, 1951, she executed a valid quitclaim deed divesting herself by her own act of all of the right, title and interest which she had in the property. Hence it follows that it is not necessary to determine whether or not the estate of her late husband was properly administered.

The five assignments of error, and each of them, are not well taken and each must be overruled, and the judgment of the court below affirmed at the costs of the appellant.

*Judgment affirmed.*

DUFFY, P. J., and TROOP, J., concur.