[Cite as *Dueck v. Clifton Club Co.*, 2017-Ohio-7161.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**Nos. 103868 and 103888**

## ARTHUR P. DUECK, ET AL.

PLAINTIFFS-APPELLANTS

vs.

## THE CLIFTON CLUB COMPANY, ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
REVERSED AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Probate Court Division
Case No. 2012 ADV 179424

**BEFORE:** Laster Mays, J., E.T. Gallagher, P.J., and Boyle, J.

**RELEASED AND JOURNALIZED:** August 10, 2017

**ATTORNEYS FOR APPELLANTS**

Dennis R. Rose
Arthur E. Gibbs III
Casey J. McElfresh
Hahn, Loeser & Parks, L.L.P.
200 Public Square, Suite 2800
Cleveland, Ohio 44114

Ross M. Babbitt
Ross M. Babbitt Co., L.P.A.
1382 West 9th Street, Suite 220
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEES**

**For Clifton Club Company**

Adam M. Fried
Julian T. Emerson
David Ross
Holly M. Wilson
Reminger & Reminger Co. L.P.A.
1400 Midland Building
101 Prospect Avenue, West
Cleveland, Ohio 44115

**For Trustees of Clifton Park Trust**

Kip Reader
Mary Forbes Lovett
Ulmer & Berne, L.L.P.
Skylight Office Tower
1660 W. Second Street, Suite 1100
Cleveland, Ohio 44113

**Also Listed:**

**Attorney for BAI, L.L.C.**

Leo M. Spellacy
Porter Wright Morris & Arthur L.L.P.
950 Main Avenue, Suite 500
Cleveland, Ohio 44113

**Attorneys for Edmond and Mary Blades, Trustees;
Louis and Cynthia Keppler; and Robert Stall**

Walter F. Ehrnfelt
Thomas M. Ehrnfelt
Waldheger Coyne & Associates Co. L.P.A.
Gemini Tower One, #550
1991 Crocker Road
Westlake, Ohio 44145

**Attorney for Sarah Cohan; Leigh E. Fox, Trustee;
Joanne H. Calkins, Trustee; Matthew and
Susan Beverstock; Jeffrey S. and Stefanie
Christian; Janna Dresing; Cynthia Dunn and
Dale Cuthbertson; Mark and Nancy S. Graves;
Scott and Amy C. Kimes; Andrew Logan; Peter
and Linda Joy Nintcheff, Trustees; Ron and
Beverly Rudin; Carolyn Seelbach; and Byron T.
and Mary Anne Crampton, Trustees**

Michael C. Cohan
Cavitch, Familo & Durkin Co., L.P.A.
1300 E. Ninth Street, 20th Floor
Cleveland, Ohio 44114

**Attorney for Charles and Patricia Geiger;**
**Gordon D. and Susan S. Geiger; Christine R.**
**Kraay, Trustee; and 17822 Lake Avenue L.L.C.**

Gary A. Vick, Jr.
Connick & Associates Co., L.P.A.
NorthPoint Tower, Suite 1720
1001 Lakeside Avenue
Cleveland, Ohio 44114

**Attorney for Joseph and Alicia A. Kerrigan**

F. Thomas Vickers
Vickers Law Group Co., L.P.A.
1119 Bassett Road
Westlake, Ohio 44145

**Attorney for John F. and Margaret McCaffrey**

John F. McCaffrey
Tucker Ellis L.L.P.
950 Main Avenue, Suite 1100
Cleveland, Ohio 44113

**Attorney for Thomas and Kelly O'Malley;**
**Michael and Patricia Smith; and Kevin and**
**Molly M. Spellacy**

Kevin M. Spellacy
McGinty, Hilow & Spellacy Co., L.P.A.
The Rockefeller Building, Suite 1300
614 West Superior Avenue
Cleveland, Ohio 44113

**Attorney for James and Nancy S. Seibert**

Michael J. Connick
Connick & Associates Co., L.P.A.
NorthPoint Tower, Suite 1720
1001 Lakeside Avenue
Cleveland, OH 44114

**Attorney for Melissa K. Meany**

Gregory D. Seeley
Seeley, Savidge, Ebert & Gourash Co., L.P.A.
26600 Detroit Road
Cleveland, Ohio 44145

**Attorney for Michael Smith and Michelle Myers**

Michael E. Smith
Frantz Ward L.L.P.
2500 Key Center
127 Public Square
Cleveland, Ohio 44114

**Attorney Harold W. Goforth**

Brian J. Darling
John Duffy & Associates
Brendan Place
23823 Lorain Road, Suite 270
North Olmsted, Ohio 44070

**Attorney for James and Katherine Romer**

James D. Romer
Polito, Paulozzi, Rodstrom & Burke
21300 Lorain Road
Fairview Park, Ohio 44126

**Co-Counsel for Plaintiffs and Attorney for Rhonda Loje and Jeffrey Mansell**

Ross M. Babbitt
Ross M. Babbitt Co., L.P.A.
1382 West Ninth Street, Suite 220
Cleveland, Ohio 44113

**Attorney for Saji T. Daniel, Trustee**

Christian M. Bates
Corsaro & Associates Co., L.P.A.
28039 Clemens Road
Westlake, Ohio 44145

**Attorney for John G. and Solvita A. McMillan**

Solvita McMillan
17904 Lake Road
Lakewood, Ohio 44107

**Attorney for James and Mary Patricia Oliver**

James P. Oliver
Squire Patton Boggs L.L.P.
4900 Key Tower
127 Public Square
Cleveland, Ohio 44114

**Attorney for Kim Lansdowne, Trustee**

Dennis R. Lansdowne
Spangenberg Shibley & Liber L.L.P.
1001 Lakeside Avenue East, Suite 1700
Cleveland, Ohio 44114

William Ahern
Kathy Franzinger
18119 Clifton Road
Lakewood, Ohio 44107

R. Craig Andrews
Ruth A. Andrews
18117 Clifton Road
Lakewood, Ohio 44107

Gary D. Arbeznik
Maureen A. Arbeznik
18128 West Clifton Road
Lakewood, Ohio 44107

Suzanne Morphy Backus, Trustee
Suzanne Morphy Backus Trust
17862 Lake Road
Lakewood, Ohio 44107

Richard R. Baker
Sandra W. Baker
18150 Clifton Road
Lakewood, Ohio 44107

Deborah A. Baker
1186 West Clifton Boulevard
Lakewood, Ohio 44107

John Ballard
Karen Ballard
1107 West Forest Road
Lakewood, Ohio 44107

Kevin Barry
Sherri Whitaker
17817 Lake Road
Lakewood, Ohio 44107

Russell L. Beeler
Carolyn R. Beeler
1123 Forest Road
Lakewood, Ohio 44107

Judith Bizga
17900 Lake Road
Lakewood, Ohio 44107

Paul Bjorn
Jean Bjorn
1084 Lake Point Drive
Lakewood, Ohio 44107

John Blesi
1131 Forest Road
Lakewood, Ohio 44107

Kevin R. Brown, Trustee
Kevin R. Brown Family Trust
17908 Lake Road
Lakewood, Ohio 44107

Markus Bruckner
Louanne Jennings Bruckner
17888 Clifton Park Lane
Lakewood, Ohio 44107

Ruth E. Budzar, Trustee
Ruth E. Budzar Trust
17835 Lake Road
Lakewood, Ohio 44107 R. Craig Andrews

Douglas Burry
Cynthia Burry
18104 Clifton Road
Lakewood, Ohio 44107

Dennis Butler
Marilyn Butler
18113 Clifton Road
Lakewood, Ohio 44107

Lawrence Campana
Cynthia Mikula
17859 Lake Road
Lakewood, Ohio 44107

Marc Castelluccio, Trustee
Kent Castelluccio, Trustee
Raymond Castelluccio 2011 Dynasty Trust
17818 Lake Road
Lakewood, Ohio 44107

Ronnie Cheung
Eva Lum
18097 Clifton Road
Lakewood, Ohio 44107

Warren Coleman, Trustee, Clifton Park Trust
Leslie D. Coleman, Trustee
18136 Clifton Road
Lakewood, Ohio 44107

Frank Conway
Karin Conway
18176 Clifton Road
Lakewood, Ohio 44107

Peter Corrigan
Kathryn Corrigan
18179 Clifton Road
Lakewood, Ohio 44107

David B. Cottenden
Courtney E. Cottenden
18135 Clifton Road
Lakewood, Ohio 44107

Diana Curran
17837 Lake Road
Lakewood, Ohio 44107

James Cutler
18169 Clifton Road
Lakewood, Ohio 44107

Brian J. Dalisky
Margaret Z. Dalisky
18141 Clifton Road
Lakewood, Ohio 44107

David L. Dashiell
Stacie F. Dashiell
17894 Clifton Park Lane
Lakewood, Ohio 44107

Michael R. Davis
Kathryn M. Davis
18140 Clifton Road
Lakewood, Ohio 44107

William L. Davis
Janice E. Davis
18162 Clifton Road
Lakewood, Ohio 44107

Charles W. Debelak
Hellene V. Debelak
18106 Clifton Road
Lakewood, Ohio 44107

Thomas Demitrack
Peggy Ann Demitrack
17804 Lake Road
Lakewood, Ohio 44107

Guy B. Schroen
Carrie Schroen
17863 Lake Road
Lakewood, Ohio 44107

Anthony W. Dimacchia
1099 West Forest Road
Lakewood, Ohio 44107

Terrence J. Dobro
Patricia A. Dobro
18147 Clifton Road
Lakewood, Ohio 44107

Cynthia Dunn
Dale Cuthbertson
1106 Forest Road
Lakewood, Ohio 44107

Griffith R. Dye
Nancy S. Dye
17846 Clifton Boulevard
Lakewood, Ohio 44107

Hugh Fagan
Alana Fagan
17831 Lake Road
Lakewood, Ohio 44107

Thomas Feser
Donna Feser
17853 Lake Road
Lakewood, Ohio 44107

Daniel Flannery
Caroline Flannery
18148 Clifton Road
Lakewood, Ohio 44107

John W. Forgetta
18121 Clifton Road
Lakewood, Ohio 44107

Victor Forgetta
Rose Forgetta
17901 Lake Road
Lakewood, Ohio 44107

Frank Foti
17869 Lake Road
Lakewood, Ohio 44107

Grace A. Frank, Trustee
1101 West Forest Road
Lakewood, Ohio 44107

Thomas J. Fraser
Mary Ellen Fraser
18177 Clifton Road
Lakewood, Ohio 44107

Billy T. Frazier
17892 Clifton Park Lane
Lakewood, Ohio 44107

Juanita Dia Frenden
17830 Lake Road
Lakewood, Ohio 44107

Robert Frost
Amy M. Frost
18126 West Clifton Road
Lakewood, Ohio 44107

John Gallagher
Eileen Gallagher
17850 Lake Road
Lakewood, Ohio 44107

Juliane Gillespie
1117 Forest Road
Lakewood, Ohio 44107

Patrick Gowell
18155 Clifton Road
Lakewood, Ohio 44107

Mark L Graves
Nancy S. Graves
17889 Lake Road
Lakewood, Ohio 44107

Sarah Grotta
18188 Clifton Road
Lakewood, Ohio 44107

Kenneth Haber
Kathleen A. Haber
17897 Lake Road
Lakewood, Ohio 44107

Theodore Harakas
Marybeth Harakas
17881 Lake Road
Lakewood, Ohio 44107

Philip W. Hall, Trustee, Clifton Park Trust
Marcia Hall
1127 Forest Road
Lakewood, Ohio 44107

Laurence Heidelberg
Kathryn Heidelberg
17852 Clifton Boulevard
Lakewood, Ohio 44107

Andrew Henderson
Joselyn Tyler
1109 Forest Road
Lakewood, Ohio 44107

John Henderson
Mary Ann Henderson
17890 Clifton Park Lane
Lakewood, Ohio 44107

Carol E. Herberger, Trustee
17905 Lake Road
Lakewood, Ohio 44107

Jerry Hoegner, Trustee
18163 Clifton Road
Lakewood, Ohio 44107

Robert Houck
Joanne Houck
1105 Forest Road
Lakewood, Ohio 44107

Timothy Jablonski
Jennifer Jablonski
17845 Lake Road
Lakewood, Ohio 44107

Christopher Jammal
Patricia Jammal
1133 Forest Road
Lakewood, Ohio 44107

Maxwell S. Bombik
18175 Clifton Road
Lakewood, Ohio 44107

Ronald Johnson
Christine Johnson
18123 Clifton Road
Lakewood, Ohio 44107

John Kappus
Melissa Kappus
18143 Clifton Road
Lakewood, Ohio 44107

Kim Katzenberger
Nora Katzenberger
1128 Forest Road
Lakewood, Ohio 44107

Kerala, L.L.C.
17891 Captains Cove
Lakewood, Ohio 44107

George Khuri
Elizabeth Khuri
1088 Lake Point Drive
Lakewood, Ohio 44107

Mary Caye Kilbane
18187 Clifton Road
Lakewood, Ohio 44107

Edward Hill and Karen Upton Hill
1121 Forest Road
Lakewood, Ohio 44107

Michael J. King, Trustee
Laura A. King, Trustee
Michael J. King Trust
18138 Clifton Road
Lakewood, Ohio 44107

Daniel J. Klenkar
Carolyn M. Klenkar
18115 Clifton Road
Lakewood, Ohio 44107

 Donna Kolis
17893 Lake Road
Lakewood, Ohio 44107

Peter A. Kuhn, Trustee, Clifton Park Trust
Cathryn Thompson Kuhn
1132 Forest Road
Lakewood, Ohio 44107

Raymond Krncevic
Margarita Krncevic
18158 Clifton Road
Lakewood, Ohio 44107

Gregg La Spisa
Melissa La Spisa
17823 Lake Road
Lakewood, Ohio 44107

Daniel P. Lavelle
Carolyn B. Lavelle
18101 Clifton Road
Lakewood, Ohio 44107

Kyle M. Lawrence
1206 West Clifton Boulevard
Lakewood, Ohio 44107

Patrick Lenehans
Karen Lenehans
1107 Forest Road
Lakewood, Ohio 44107

John Lewis
Pauline Lewis
17807 Lake Road
Lakewood, Ohio 44107

Timothy Liston
Dawn Griffith Liston
1101 Forest Road
Lakewood, Ohio 44107

Laura Novosel Little, Trustee
Laura Novosel Little Trust
Richard A. Little, Trustee
Richard A. Little Trust
18105 Clifton Road
Lakewood, Ohio 44107

David M. Lorenz
Susan G. Lorenz
17909 Lake Road
Lakewood, Ohio 44107

Mark Magnotto
Pamela Magnotto
17874 Lake Road
Lakewood, Ohio 44107

Cesare Mainardi
17844 Lake Road
Lakewood, Ohio 44107

Joel J. Jensen
Laura A. Jensen
17811 Lake Road
Lakewood, Ohio 44107

Goldie Maxim, Trustee
Ernest J. Maxim Family Trust
17805 Lake Road
Lakewood, Ohio 44107

Robert L. Mazzarella
Judith C. Mazzarella
18186 Clifton Road
Lakewood, Ohio 44107

Laura McBride
1115 Forest Road
Lakewood, Ohio 44107

Timothy McBride
Kathleen McBride
17883 Lake Road
Lakewood, Ohio 44107

Robert McCabe
17840 Lake Road
Lakewood, Ohio 44107

Nancy McCann
17802 Lake Road
Lakewood, Ohio 44107

Brendan McCarthy
Lori McCarthy
18184 Clifton Road
Lakewood, Ohio 44107

Rosalyn McGlynn
18096 Clifton Road
Lakewood, Ohio 44107

James McGowan
Margie Wright McGowan
17839 Lake Road
Lakewood, Ohio 44107

Michael J. McMahon
Laura A. McMahon
17889 Lake Road
Lakewood, Ohio 44107

James H. McPolin
Noel H. McPolin
1110 West Forest Road
Lakewood, Ohio 44107

Robert C. Rose
17856 Lake Road
Lakewood, Ohio 44107

Shelley Mellino
17824 Lake Road
Lakewood, Ohio 44107

Estate of Burton J. McGlynn
c/o Michael J. McGlynn
18110 Clifton Road
Lakewood, Ohio 44107

Joanne S. Miller
18109 Clifton Road
Lakewood, Ohio 44107

Susan Minnich
17834 Lake Road
Lakewood, Ohio 44107

Ned Molovich
Glenda Molovich
1129 Forest Road
Lakewood, Ohio 44107

Benjamin D. Whiting, Trustee
Melanie Whiting, Trustee
Whiting Family Revocable Living Trust
18137 Clifton Road
Lakewood, Ohio 44107

PNC Bank f.k.a. National City Bank, Trustee
1900 East Ninth Street, Second Floor
Cleveland, Ohio 44114

Stephanie D. Neider
17886 Beach
Lakewood, Ohio 44107

Charles G. Norton, Trustee
Christe Norton McGraw, Trustee
Suzanne H. Norton Trust
1124 Forest Road
Lakewood, Ohio 44107

James E. O'Brien
Rosanne M. O'Brien
1134 Webb Road
Lakewood, Ohio 44107

Jill O'Brien, Trustee
Jill F. O'Brien Revocable Trust
17809 Lake Road
Lakewood, Ohio 44107

Daniel Oldfield
Claudine Oldfield
17906 Lake Road
Lakewood, Ohio 44107

Alec Pacella
1130 Forest Road
Lakewood, Ohio 44107

Gregory Pacholski
Terri A. Holliday
18131 West Clifton Road
Lakewood, Ohio 44107

Ann Paras
17841 Lake Road
Lakewood, Ohio 44107

Anthony Pietromica
Anne Pietromica
18185 Clifton Road
Lakewood, Ohio 44107

Michael Polito
Annemarie Polito
18156 Clifton Road
Lakewood, Ohio 44107

Mary Papandreas, Trustee
John G. Papandreas Personal Trust
17828 Lake Road
Lakewood, Ohio 44107

Brian Powers
Maureen Powers
17855 Lake Road
Lakewood, Ohio 44107

Daniel Raynor
Jennifer Raynor
18111 Clifton Road
Lakewood, Ohio 44107

Mark H. Reinhold
Jean S. Reinhold
1120 Forest Road
Lakewood, Ohio 44107

Bradford J. Richmond
Margaret A. Richmond
1122 Forest Road
Lakewood, Ohio 44107

John S. Pyke, Jr., Trustee, Clifton Park Trust
Judith A. Pyke
17808 Lake Road
Lakewood, Ohio 44107

Peter Rose
Erika Gadomski
17870 Lake Road
Lakewood, Ohio 44107

Karen Ross
18183 Clifton Road
Lakewood, Ohio 44107

Michael Rowell
Jennifer Rowell
17803 Lake Road
Lakewood, Ohio 44107

John E. Rupert
18129 West Clifton Road
Lakewood, Ohio 44107

Dorcas Russo
18165 Clifton Road
Lakewood, Ohio 44107

Gregory Sanker
Kim Sanker
18124 West Clifton Road
Lakewood, Ohio 44107

Frank J. Schwelik
Jennifer C. Schwelik
18164 Clifton Road
Lakewood, Ohio 44107

Stephen W. Schwind
Cheryl K. Schwind
1119 Forest Road
Lakewood, Ohio 44107

Joyce Senney
17849 Lake Road
Lakewood, Ohio 44107

Donald Shultzaberger
Robert Paraska
17896 Captains Cove
Lakewood, Ohio 44107

Robert E. Smitley
Joel R. Toth
18107 Clifton Road
Lakewood, Ohio 44107

Edward Spellman
17854 Lake Road
Lakewood, Ohio 44107

Ryan M. Spicer
Lisa M. Spicer
1108 West Forest Road
Lakewood, Ohio 44107

Joseph Starck
Rebecca Starck
17873 Lake Road
Lakewood, Ohio 44107

Donald Strang
Karen Strang
17820 Lake Road
Lakewood, Ohio 44107

Robert A. Szabo
Julie K. Szabo
18161 Clifton Road
Lakewood, Ohio 44107

Nancy Tanis
1082 Lake Point Drive
Lakewood, Ohio 44107

Richard D. Tanner
Gail A. Tanner
18153 Clifton Road
Lakewood, Ohio 44107

Charles Telliard
Laurel Telliard
17878 Lake Road
Lakewood, Ohio 44107

Jason Therrien
Holly Therrien
17825 Lake Road
Lakewood, Ohio 44107

Robert Thomas
Diane Thomas
17907 Lake Road
Lakewood, Ohio 44107

William Todia
17882 Lake Road
Lakewood, Ohio 44107

Eleanor Truett, Trustee
Irrevocable Trust B
17880 Lake Road
Lakewood, Ohio 44107

Thomas Turner
Linda Turner
1102 Forest Road
Lakewood, Ohio 44107

Mark M. Twohig
Mary E. Twohig
17826 Lake Road
Lakewood, Ohio 44107

Ernest Vargo
Trisha Vargo
17877 Lake Road
Lakewood, Ohio 44107

Paul C. Venizelos
Christina G. Venizelos
17864 Lake Road
Lakewood, Ohio 44107

Terryl Q. Walker
Susan Jane Walker
18152 Clifton Road
Lakewood, Ohio 44107

Clinton L. Weddell
Tara M. Kerivan (f.k.a. Weddell)
1116 Forest Road
Lakewood, Ohio 44107

Jeffrey Williams
Erica Williams
17843 Lake Road
Lakewood, Ohio 44107

Kent Winterhalter
Lorysa Winterhalter
18091 Clifton Road
Lakewood, Ohio 44107

Daniel Witzigreuter
Amy Witzigreuter
17827 Lake Road
Lakewood, Ohio 44107

Nicolas Young
1 100 Forest Road
Lakewood, Ohio 44107

Rebecca Bugac Zak
1102-1/2 Forest Road
Lakewood, Ohio 44107

Chad Zumkehr
Mary Ellen Zumkehr
17876 Lake Road
Lakewood, Ohio 44107

Louis S. Binder
18171 Clifton Road
Lakewood, Ohio 44107

Francis Keller
18173 Clifton Road
Lakewood, Ohio 44107

Wynne Morley
1104 Forest Road
Lakewood, Ohio 44107

Eugene G. Drust, Trustee
Nora E. Drust, Trustee
Drust Family Trust
17801 Lake Road
Lakewood, Ohio 44107

Jill C. Gilmore
17829 Lake Road
Lakewood, Ohio 44107

Charles Drumm, Current Head Trustee, Clifton Park Trust
Catherine A. Drumm
17895 Lake Road
Lakewood, Ohio 44107

Paul A. Fox
18139 West Clifton Road
Lakewood, Ohio 44107

Karen Wilson
18180 Clifton Road
Lakewood, Ohio 44107

ANITA LASTER MAYS, J.:

{¶1} Plaintiffs-appellants Arthur P. Dueck ("Dueck"), Todd Gilmore ("Gilmore"), Nancy Binder ("Binder), and William R. Keller ("Keller," collectively "appellants") appeal the trial court's grant of summary judgment in a declaratory judgment action, interpreting a trust agreement in favor of defendants-appellees Clifton Park Trust Trustees ("Trustees") and The Clifton Club Company ("Clifton Club"). This is a consolidated appeal. In *Dueck v. Clifton Club Co.*, 8th Dist. Cuyahoga No. 103888, appellant Dennis F. Butler states that his interests are aligned with the appellants, and that he adopts the arguments asserted.[1] After a thorough review of the record, we find that the nonresident members of the Clifton Club are not beneficiaries of the Trust and, as a result, have no legal rights. The matter is reversed and remanded as instructed herein for a hearing on the amount of sanctions.

I. FACTS AND BACKGROUND

{¶2} Appellants are lot owners in the Clifton Park Allotment in Lakewood, Ohio ("Clifton Park"), a residential area owned and developed in the 1800s by the Clifton Park Association ("Clifton Park Association"), predecessors in interest to the Clifton Park Land & Improvement Company ("Land Company"). In 1912, the Land Company placed the Clifton Park private park and beach area (collectively the "Beach") into a trust

---

[1] The trial court required that all lot owner Beneficiaries be named party defendants to the declaratory judgment action below.

("Trust") for the use and enjoyment of all Clifton Park lot owners, vesting lot owners with the legal status of Trust beneficiaries ("Beneficiaries"). The Clifton Club, a social club operating in Clifton Park since 1902, is a members-only establishment. Membership is open to the lot owner Beneficiaries, as well as nonresidents of Clifton Park ("Club Members"). While the Clifton Club's membership is comprised of both resident lot owners and nonresidents, the focus of this case is whether Club Members, due to their status as Club Members, are Beneficiaries under the Trust and entitled to Beach access.

{¶3} Several months after the creation of the Trust, the Clifton Club succeeded the Land Company as owners to sublots 38, 39, 40, and 41 (the "Club Lots") in Clifton Park. Over the years, the Clifton Club membership has grown, creating crowded beach conditions. As a result, appellants seek a declaration that the Club Members are not lot owners; therefore, (1) they are not Beneficiaries of the Trust, and (2) they do not have the same legal rights as the lot owner Beneficiaries to access the Beach.

## A. History and Formation

{¶4} Clifton Park Association began development of Clifton Park in 1893 with the vision of establishing an exclusive residential community in a beach and park setting for the use and enjoyment of the Clifton Park lot owners. The 1897 deeds issued by Clifton Park Association to shareholders and founders William Starkweather and Henry Coffinberry included covenants and restrictions establishing that the beach and park areas were intended to be for the exclusive use of Clifton Park lot owners.

{¶5} Upon Starkweather's death in 1899, the remaining parcels in Clifton Park were conveyed from Clifton Park Association to the Land Company, constituting approximately 143.23 acres of land. The deed provides that it is:

> [M]ade and accepted subject to the covenants of The Clifton Park Association in the certain deeds, to [Starkweather] and [Coffinberry] above named as to conveyances of said premises thereafter to be made and the grantee assumes and agrees to [illegible word] form to and abide by said covenants in like manner and with like effect as if the same had been entered into by it as the grantor named in said conveyances.

{¶6} The deed dictates that the lots be used exclusively for private residences, and the "covenants, agreements and provisions shall run with the land for a period of fifty (50) years from the date hereof," excepting property sold for:

> [S]tables, canal slips, boat houses casinos or clubhouses, ice houses or bathing houses for the use of the owners of the lots in said allotment, and that portion lying along Rocky River and bordering on the lake, known as the Flat Land, being a triangular piece not subdivided into separate lots, and containing about twenty (20) acres, more or less.

**B.      The Club Lease**

{¶7} Defendant-appellee the Clifton Club was incorporated in 1902 as a for-profit corporation, formed for the purpose of building a clubhouse and to operate as a social club. The Clifton Club initially leased the Club Lots from the Land Company from 1902-1912 ("Club Lease").

{¶8} The Club Lease provisions include: (1) lots are to be used solely for a social club or private residence; (2) any residence erected shall not cost less than $12,000; (3) minimum required lot frontage; (4) a requirement that all other lot deeds or leases will

contain similar restrictions that run with the land, for a period of 50 years; and 5) that the Land Company will convey the fee interest:

> [I]n the reserved and dedicated for park purposes * * * to a Board of Trustees of not less than three members who shall be property owners in said allotment with power to perpetuate said Board of Trustees and with power to hold said property for the use and benefit of persons owning land in said allotment.

> **{¶9}** The Club Lease includes a purchase option:

> [T]he first party will also give, grant and make to second party without further consideration and for same period of time a lease of a certain strip of land upon the Easterly bank of Rocky River for a boat house, and also a strip of land for the purpose of a stable, together with the right to use the approaches to the same. The location and size of the last three pieces of property to be hereafter agreed upon between the parties hereto.

The Club Lease limits Clifton Club membership to 250 members unless the Land Company or its successors give consent to increase membership.

## C.     The Trust Deed

**{¶10}** In March 1912, the Land Company conveyed the private beach and park to five trustees ("Trustees") via a trust deed ("Trust Deed"). The Trust Deed references the Beach for the sole use and benefit of all the owners of sub lots, or parts of lots, in the Clifton Park Allotment.  *  *  *  (Emphasis added.)

> [B]eing the parts and parcels of land in the grantor's said allotment, or lying adjacent thereto, *which have been reserved for the use and benefit of the owners of land in said allotment*.

> *     *     *

> To have and to hold the premises aforesaid, with the appurtenances thereunto belonging, unto the said grantees and their successors in trust and assigns, and the survivors or survivor thereof, and the heirs of such survivor, so that neither said grantor, nor its successors, nor any other person claiming title through or under it, shall or will hereafter claim or demand any right or title to the premises, or any part thereof, but they and every one of them shall be by these presents excluded and forever barred, in trust, nevertheless, *for the sole use and benefit of all the owners of sub lots, or parts of lots, in the Clifton Park Allotment \* \* \** and the heirs, representatives successors or assigns, of such owners subject to the terms, conditions and regulations herein contained.

(Emphasis added.)

{¶11}   The Trust Deed directs that the Trustees hold the Beach in trust for the "common use of all of the [Clifton Park] lot owners, and their successors in title, and members of their households." Appellants are lot owners and are, therefore, Beneficiaries.

{¶12}   The Trust Deed also states:

> [T]he Trustees are directed to collect funds for maintenance, snow removal and other repairs to the Property, including the "bathing pavilion," and "establish regulations for the use of, and provide for proper policing of \* \* \* parks and bathing pavilion and generally maintain all of said property in good order and condition for the use of lot owners in said allotment, as the same is now maintained.

Pursuant to the Trust Deed, the Trustees collect an annual assessment from the Beneficiaries for the "care of the lands and buildings in the hands of the trustees, and their necessary expenses in carrying out their duties." The assessment also applied to "several sub lots reserved to the Company in the deeds of conveyance for the same," which would include the Club Lots that were subject to the Club Lease at the time of the Trust Deed conveyance.

**D.    The Club Deed**

{¶13}   By deed dated July 1912, the Clifton Club received title to the Club Lots ("Club Deed").   In addition to the ownership transfer, the Club Deed conveys:

 [T]he right to use in common with other owners of the land in said allotment, all portions of said allotment which shall by the Grantor be devoted to the purposes of park or park spaces for the exclusive use and benefit of such lot owners but such use of the parks and of any pavilion or bath or boat houses as may be erected thereon by the said company for the benefit of owners of property in said allotment, shall be subject to such rules and regulations as may be established by said Company to provide for the taxes and expenses of the maintenance and preservation of the same, and the proportionate part of such taxes and expenses shall be chargeable to the lot herein conveyed and shall be a lien upon said lot to secure its payment. *  *  *  [T]he grantee will not sell or allow to be sold on said premises any liquor, whether spirituous, vinous or fermented, or use said premises or cause or permit the same to be used for any business purposes whatsoever, or for any purpose [other] than that of a private residence or social club.  *  *  *

{¶14}    Finally, the Club Deed referenced the future creation of the Trust, though it had, in fact, been created several months prior:

The said grantor further covenants with the said grantee that it will, before the period of its corporate existence or any renewal or renewals thereof expires, convey the fee in the land reserved for park purposes in the allotment of The Clifton Park Land and Improvement Company, as shown by plat thereof made and on file in the office of the Secretary of the Company, to a Board of Trustees of not less than three members who shall be property owners in said allotment,   subject to such rules and regulations in regard to the use thereof as hereinbefore provided, and for that purpose the said Trustees shall succeed to all the rights, powers and duties of the Company as to use, maintenance, repairs, improvements, and for all purposes whatsoever.

**E.    The Current Action**

**{¶15}** The Club Members and Beneficiaries have enjoyed use of the Beach over the years. The only portion of the Trust property at issue is the Beach and the legal right of the Club Members, the Club Members who are not resident lot owners, to use the Beach.[2]

**{¶16}** There is no dispute between the parties that the Clifton Club is a direct Beneficiary as a successor lot owner. It is also undisputed that, beginning in 1942 and thereafter, the Clifton Club has made annual payments to the Trustees for the use of the Beach by the Club Members, based on various formulas determined by the Trustees. There is no disagreement that the Trustees have been vested with the power to enter into agreements with the Clifton Club regarding the formula for, and amount of, the payments. In fact, the Clifton Club states it has been making annual payments of $12,000 to $112,300 per year for the past 30 years, an amount greater than the assessment fee formula set forth in the Trust for parcel owners.

**{¶17}** By 2011, overcrowding of the Beach and related parking became an issue. A number of Beneficiaries requested that the Trustees implement regulations to reduce use of the Beach by the Club Members. Appellants discovered at a December 2011 meeting with the Trustees that the Trustees were not sure whether they had the authority to limit the number of Club Members accessing the Beach. The Trustees elected to

---

[2] Club Members who are lot owners are clearly direct Beneficiaries, though the status stems from their lot ownership.

address the issue by promulgating rules ("Beach Rules") governing use of the Beach by both Beneficiaries and Club Members.

{¶18} The Clifton Club issued a letter to the Trustees on December 1, 2011, protesting the Beach Rules. The Clifton Club argued that the Beach Rules were "discriminatory" and placed "unilateral restrictions" on the Club Members. The letter warned that, "we believe the [Clifton] Park Trustees have breached their fiduciary responsibility to represent all Beach members fairly and without discrimination." Appellants state they were not informed of the existence of the letter warning of the breach until the pending action.

{¶19} In February 2012, appellants Dueck and Butler met with two Trustees requesting pursuit of an action to determine the scope of the Club Members' legal right of Beach access. Dueck also states that he and other Beneficiaries were informed, during a March 2012 meeting with the Trustees, that the Trustees had obtained a legal opinion regarding Club Members Beach access rights. Dueck requested that Trustee Drumm obtain an independent expert opinion regarding the legal source of the Club Members' Beach access rights, for which Dueck offered to pay half of the cost. The offer was rejected.

{¶20} On April 27, 2012, Dueck and several other lot owners asked the Trustees to provide them with a copy of the legal memorandum obtained by the Trustees. The document was not provided. The Trustees stated at a subsequent meeting with the

Beneficiaries that, if any Beneficiary had further issues to resolve, they should take the matter to court, because the Trustees were no longer going to communicate with the Beneficiaries on the issue.

{¶21} The Clifton Club and Trustees posit that the Club Members have the same legal right to use the Beach as the Beneficiaries pursuant to the Trust Deed and Club Deed. Appellants agree that the Club Members have the right to use the Beach with the permission of the Trustees, but deny that they are direct Beneficiaries, and further state that neither the language, nor the history, supported the position of the Clifton Club and Trustees.

{¶22} The lot owners filed a declaratory action to determine Trust rights, on June 2, 2012, appellants initiated the current action against the Clifton Club in the Cuyahoga County Court of Common Pleas, Probate Division, requesting that the trial court declare that the Club Members are not Beneficiaries and, as a result, have no legal entitlement to use the Beach. Appellants also sought a determination that any grant to use the Beach contained in the Club Deed is null and void. The declaratory action did not request that Club Members be barred from using the Beach on the negotiated fee basis.

{¶23} The Clifton Club filed a motion to dismiss under Civ.R. 12(B)(6), 12(B)(7), and 19(A), and the Declaratory Judgment Act (R.C. Chapter 2721). Arguments included that the Trustees and fellow lot owners were necessary parties:

> The Plaintiffs purport to adjudicate the rights of non-parties with legally protectable interests. The Clifton Park Trustees hold title to Clifton Beach,

the only land at issue in this case, and they owe fiduciary obligations to all Clifton Park beneficiary lot owners. To the extent the Court permits this action to survive Civ. R. 12(B)(6), the Trustees and the Plaintiffs' fellow beneficiary-Clifton Park residents are Civ.R. 19 necessary parties needed for just adjudication. Likewise, R.C. 2721.12 mandates that the absence of these necessary parties constitutes a jurisdictional defect that prevents a declaratory judgment action from proceeding.

The Clifton Club did not argue, however, that the Club Members were also necessary parties due to their "legally protectable" interests.

{¶24} The Trustees filed an amicus brief supporting the Clifton Club's argument that the Trustees and lot owners were necessary parties, and echoing the Clifton Club's position that the Club Members were legally entitled to use the Beach. The trial court determined that the Trustees and all lot owner Beneficiaries were necessary parties and required joinder.

{¶25} Appellants distributed a letter to residents explaining the trial court's decision to include the lot owners and Trustees in the action. The Trustees also issued a notice to residents and Club Members, refuting a number of representations contained in appellants' letter. The Trustees assured the recipients that they had not chosen sides in the matter, and advised that "[t]here are implications for each lot owner's financial, insurance and homeowner's circumstances" as a result of the lawsuit by appellants. The Trustees' notice referred recipients to the Trustees' website to review "FAQ's" addressing the case.

{¶26} On April 24, 2013, appellants filed a first amended complaint adding the

Trustees and remaining Beneficiaries as parties. The first amended complaint requested that the trial court declare:

a) that the members of the Clifton Club who are not sublot owners are not beneficiaries under the Deed of Trust,

b) the members of the Clifton Club who are not sublot owners have no legal right to use Trust property (including the Beach), and

c) the provision of the Clifton Club Deed dated July 1, 1912 allowing use of Trust property by the members of the Clifton Club who are not sublot owners (including the Beach) in contradiction to the then-existing Deed of Trust is null and void.

The first amended complaint requested, alternatively, the "court enter an order defining the rights of and relationship between the plaintiffs and the Club Members as to the use of the Trust property, including the Beach."

{¶27} On October 31, 2014, appellants filed a motion to remove the Trustees for breaching the duty of impartiality, before and during the suit, by siding with the Clifton Club on Beach access and by refusing access to Trust documents. The Trustees responded that their actions were justified by their interpretation of the Trust. The motion to remove the Trustees was denied without opinion on August 24, 2015.

{¶28} Appellants also filed a motion with the court on June 25, 2015, requesting that the Trustees pay appellants' attorney fees pursuant to R.C. 5810.04. The trial court denied the motion without opinion on August 24, 2015.

{¶29} On September 1, 2015, the Trustees filed a motion for summary judgment, claiming that there were no genuine issues of material fact that: (1) the Clifton

Club, as a lot owner, is a Beneficiary with a legal right to use the Beach; and (2) the Trustees have the legal power to regulate the use of the Beach.

{¶30}  Appellants responded that the undisputed issues identified by the Trustees in their motion were not, in fact, the material issues in the case.  The question before the court was not whether the Clifton Club, as a lot owner, was a Beneficiary of the Trust. The question before the court was whether the Clifton Club's right to use the Beach as a Beneficiary extended as an enforceable, legal right to the Club Members.  In other words, were the Club Members defined Beneficiaries?

{¶31}  The trial court granted summary judgment.  The court determined that parole evidence[3] was not required to interpret the Trust, and that the "principal issue in this case is whether" the Club Members "have a right to use" the Beach. The trial court explained that the Clifton Club, as a lot owner, is a Beneficiary "bound by the Trustees' regulation of Trust property."  While finding that the Trust Deed stands alone for interpretation purposes, the trial court cited the portions of the Club Deed, and the Club Lease, to support its findings as to the Land Company's intent in forming the Trust.  The trial court rejected appellants' argument that the Land Company could not grant a greater

---

[3]   "'The parol evidence rule is a rule of substantive law that prohibits a party who has entered into a written contract from contradicting the terms of the contract with evidence of alleged or actual agreements.'" *Ed Schory & Sons v. Francis*, 75 Ohio St.3d 433, 440, 1996-Ohio-194, 662 N.E.2d 1074, quoting Shanker, *Judicial Misuses of the Word Fraud to Defeat the Parol Evidence Rule and the Statute of Frauds (With Some Cheers and Jeers for the Ohio Supreme Court)*, 23 Akron L.Rev. 2 (1989).

right to use the Beach via the Club Deed, because the Land Company no longer had authority over the Beach, which had already been placed in Trust.

{¶32} The trial court took judicial notice of dicta from *Wallace v. Clifton Land Co.*, 92 Ohio St. 349, 110 N.E. 940 (1915), for the premise that the Clifton Club membership has never been restricted to lot owners.[4] *Id.* at 359. The trial court concluded that it was "illogical to reason" that the rights of the Clifton Club as lot owners to "use" the Beach did not vest the same "privilege" in its members, finding there is nothing in the Trust Deed to suggest that the resident Club Members could have access, but the nonresident Members could not. Since the Clifton Club has been in existence since 1902, the trial court held that it does not make sense to think that the Land Company conveyed the Beach without intending that the Club Members have access.

{¶33} Based on the foregoing, the trial court determined that, due to the status of the Clifton Club as a Beneficiary, "the Clifton Club, and through it, all of its members, has a legal right to use Trust property, including the beach, subject to the regulations and restrictions as set forth in the Trust Deed and Club Deed." The Trustees' motion for summary judgment was granted. This appeal ensued.

## II. ASSIGNMENTS OF ERROR

---

[4] The sole question before the *Wallace* court was the "right of The Clifton Land Company to devote these lots, covered by these restrictions, to street purposes, and that question must be answered in the negative." *Id.* at 361.

**{¶34}** Appellants present three assignments of error: (1) the trial court erred in granting the Trustees' motion for summary judgment, relying on appellees' extrinsic evidence while ignoring the extrinsic evidence of appellants; (2) the trial court erred in refusing to remove the Trustees after the Trustees failed to provide documents to appellants during discovery as required by the Trust Code; and (3) the trial court erred in denying appellants' motion for attorney fees.

**{¶35}** We begin with appellants' first assigned error, that the trial court erred in granting the motion. We agree.

## A. Summary Judgment

### 1. Standard of Review

**{¶36}** Our standard of review for summary judgments is de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241:

> De novo review means that this court "uses the same standard that the trial court should have used, and we examine the evidence to determine if as a matter of law no genuine issues exist for trial." *Brewer v. Cleveland Bd. of Edn.*, 122 Ohio App.3d 378, 383, 701 N.E.2d 1023 (8th Dist.1997), citing *Dupler v. Mansfield Journal*, 64 Ohio St.2d 116, 119-120, 413 N.E.2d 1187 (1980). In other words, we review the trial court's decision without according the trial court any deference. *Brown v. Cty. Bd. of Commrs.*, 87 Ohio App. 3d 704, 711, 622 N.E.2d 1153 (4th Dist.1993).

> Under Civ.R. 56(C), summary judgment is properly granted when (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1976). If the moving party fails to satisfy its initial burden, "the motion for summary

judgment must be denied." *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 1996-Ohio-107, 662 N.E.2d 264 (1996). But if the moving party satisfies "its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." *Id*.

*Hinton v. Newburgh Hts.*, 8th Dist. Cuyahoga No. 103412, 2016-Ohio-2727, ¶ 10-11.

### 2.    Issue Clarification

**{¶37}** We find it necessary to clarify the issue in this case prior to analysis. We reiterate here that appellants requested a declaration as to:

(1) whether the Club Members are *Beneficiaries* under the Trust Deed;

(2) that Club Members have no *legal right* to use the Beach; and

(3) whether the Club Deed provision extending use of the Beach to Club Members is valid since the settlors had no control over the Beach after the Trust creation.

(Emphasis added.)

**{¶38}** In contrast, the Trustees present a different description of the issue:

*Whether individual Clifton Club members are themselves beneficiaries of the Trust, however, has never been an issue in this case.* Defendant Trustees have never made such an argument. Rather, *the position consistently taken by the Trustees is that the issue in this case is whether the Clifton Club members had a right to use the Beach*, given the fact that the Clifton Club itself is a beneficiary of the Trust and clearly has   a right to use all of the Trust property. The Probate Court agreed with the Trustees' position.

(Emphasis added.)

**{¶39}** The trial court determined that the Clifton Club was a Beneficiary under

the Trust Deed by its acquisition of the Club Lots, an issue that is not in dispute in this case. The trial court capsulized the issue to be whether the Club Members "have a right to use" the Beach under the Trust Deed. The trial court concluded that the only way the Clifton Club could exercise its rights to access the Beach was through the members, and that the documents and history supported that the Club Members "had the right" to use the Beach.

{¶40} Appellants have consistently argued that the Club Members do not have a "legal right" to use the Beach, but that the right is by permission and subject to regulations by the Trustees. Appellees maintain the same position. Thus, it appears that the parties actually agree that Club Members may use the Beach by permission, for an annual fee, with regulatory oversight by the Trustees.

{¶41} We construe the pending question to be whether the nonresident Club Members are direct Beneficiaries under the Trust Deed, as stated in Count I of the first amended complaint, arguably entitling them to equal access and commensurate status as the owner Beneficiaries.

### 3.    Law and Analysis

{¶42} A trust is defined as:

[A] fiduciary relationship with respect to property, subjecting the person by whom the title to the property is held to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an intention to create it.

Restatement of the Law 2d, Trusts, Section 2 (2012).

{¶43}     The Ohio Trust Code ("OTC"), effective January 1, 2007, 2006 Am.Sub.H.B. 416, No. 126,[5] found in R.C. Chapters 5801 through 5811, is Ohio's adaptation of the Uniform Trust Code, promulgated in 2000 ("UTC"). The UTC is the first effort at national codification of the law of trusts, drawing from the common law, Restatements, and current statutes. *See* R.C. 5801.01, Official Comment, Uniform Trust Code Section 103.

{¶44}     The OTC defines the "terms of a trust" as "the manifestation of the settlor's intent regarding a trust's provisions as expressed in the trust instrument or as may be established by other evidence that would be admissible in a judicial proceeding. R.C. 5801.01(V). A trust instrument is defined as "an instrument executed by the settlor that contains terms of the trust and any amendments to that instrument." R.C. 5801.01(W).

{¶45}     In Ohio, a court's interpretation of the terms of a trust is guided by the settlor's intent. "Courts look to the express language of the trust agreement to provide an indication of that intent. The words used in the instrument are presumed to be used in their ordinary sense." *Hobeck v. Soc. Natl. Bank*, 8th Dist. Cuyahoga No. 66029, 1994 Ohio App. LEXIS 4191, *6 (Sept. 22, 1994), quoting *Ohio Citizens Bank v. Mills*, 45 Ohio St.3d 153, 543 N.E.2d 1206 (1989). "When the language of the trust instrument is

_____

[5] Generally, the Ohio Trust Code applies retroactively, except as otherwise provided in the statutes, where it would substantially interfere with constitutional rights, or conflicts with express trust terms. R.C. 5811.03.

unambiguous, a court can ascertain the settlor's intent from the express terms of the trust itself, and extrinsic evidence is not admissible to interpret the trust provisions." *Domo v. McCarthy*, 66 Ohio St.3d 312, 314, 612 N.E.2d 706 (1993).

{¶46} There is also a presumption in Ohio that a deed of conveyance expresses the intention of the grantor and grantee at the time that the deed was executed. *Am. Energy Corp. v. Datkuliak*, 174 Ohio App.3d 398, 2007-Ohio-7199, 882 N.E.2d 463, ¶ 53 (7th Dist.). Extrinsic evidence will only be considered where the deed language is ambiguous or unclear, "or when the circumstances surrounding the deed invest the language of the deed with a special meaning * * * an effort to give effect to the parties['] intentions." *Sedlak v. Solon*, 104 Ohio App.3d 170, 176, 661 N.E.2d 265 (8th Dist.1995), citing *37 Robinwood Assocs. v. Health Indus., Inc.*, 47 Ohio App.3d 156, 547 N.E.2d 1019 (10th Dist.1988).

{¶47} As a written contract of conveyance, a trust is subject to the rules of contract and instrument interpretation as a matter of law, and the rules of contract construction apply. *Long Beach Assn. v. Jones,* 82 Ohio St.3d 574, 576, 1998-Ohio-186, 697 N.E.2d 208; *Arnott v. Arnott*, 132 Ohio St.3d 401, 2012-Ohio-3208, 972 N.E.2d 586, ¶ 14 ; *Sedlak v. Solon*, 104 Ohio App.3d 170, 176, 661 N.E.2d 265 (8th Dist.1995).

{¶48} We look to the Trust Deed to determine whether the intent of the settlors may be discerned from the four corners of the document. *Soc. Natl. Bank*, 8th Dist.

Cuyahoga No. 66029, 1994 Ohio App. LEXIS 4191, *6.  The Trust Deed provides, in pertinent part, that the Land Company conveys the described property:

> [I]n consideration of the covenants and agreements entered into by said company with the several owners of lots and lands in its allotment herein described * * * [grants to the Trustees] all such right and title as the said grantor has or ought to have in the [property] * * * *which have been reserved for the use and benefit of the owners of land in said allotment*, * * * *for the sole use and benefit of all of the owners of sub lots, or parts of lots*, in the Clifton Park Allotment * * * and the heirs, representatives, successors or assigns, of such owners.

> *   *   *

> (1) The trustees shall hold title to and preserve all the land deeded to them *for the common use of all the lot owners in the Clifton Park Allotment, and their successors in title, and members of their households*. (2) No part of said land shall be sold, conveyed or dedicated to public use without the unanimous consent of all the lot owners in said allotment. (3) The trustees shall collect money from the persons interested as hereinafter provided, and from such sums so collected, * * * [to pay taxes, maintenance, etc.]; *shall establish regulations for the use of, and provide for proper policing * * * for the use of lot owners in said allotment,* as the same is now maintained.

> *   *   *

> The cost of all ordinary care of the lands and buildings in the hands of the trustees, and their necessary expenses in carrying out their duties, *shall be divided among the several lot owners and collected from them by an annual assessments* as follows:  Each sub lot, or part of sub lot, in the allotment shall be charged with such proportion of the total annual expense as its value for taxation, exclusive of buildings, is of the total value of all the sub lots in said allotments, exclusive of buildings. The owner of such sub lots, or part of sub lot[,] shall be bound to pay the sums so assessed to the trustees upon their written notice and demand; and the lien upon the several sub lots reserved to the Company in the deeds of conveyance for same to secure the payment of such assessments, is transferred to the said trustees, and may be enforced by them.

(Emphasis added.)

{¶49} There is no dispute that the Clifton Club is a Beneficiary as a successor lot owner to the Land Company. The language of the Trust Deed makes it clear that the settlors' intent was to convey the Beach for the use and benefit of the Clifton Park lot owners. At the time of creation, the Land Company held title to the Club Lots, which were then subject to the Club Lease. The Trust Deed specifically provided that the assessment fees for the Beach also applied to the Land Company's retained parcels, and vested in the Trustees a lien right for that purpose.

{¶50} As to the legal rights of the Club Members, the trial court determined, and appellees advocate, that the Clifton Club, as a corporation, holds its property in trust for the members, and that the members are therefore the "beneficial owners" of the corporation's property. Trustees' brief, citing Bogert, *The Law of Trusts and Trustees, Trusts and Estates*, Section 16. The Trustees also cite *Raulston v. Everett,* 561 S.W.2d 635 (Tex.Civ.App.1978), which concluded that a membership corporation is similar to an unincorporated association, though it is incorporated. Members acquire "not a severable right to any of its property or funds, but merely a right to the joint use and enjoyment thereof so long as he continues to be a member." *Id*. at 638.

{¶51} Additionally advanced by the Trustees is the premise that usage by the members is considered to be usage by the Clifton Club, such as in the case of *Saunders Point Assn. v. Cannon*, 177 Conn. 413, 418 A.2d 70 (1979). The *Saunders* court was

asked to determine whether the plaintiff club had established a prescriptive easement, based on the members' open use and belief for the previous 40 years, to use a beach located on property recently purchased by the defendant. A factor the *Saunders* court considered in finding the existence of the easement based on the totality of the circumstances, was the members' belief that their access entitlement was due to the club membership,

and not as individuals, so that the usage could be imputed to the club. *Id.* at 420.

{¶52} The Trustees' cited cases support the proposition that the Club Members possess a permissive or derivative right due to the Clifton Club's status as a Beneficiary. We do not, however, find that the cases establish that the Club Members are direct legal Trust Beneficiaries, the query pending here.

{¶53} The Trust Deed was authored in 1912. At that time, the Clifton Club was a for-profit corporation with shares owned by a limited number of shareholders with a capped number of members. The Clifton Club is not specifically mentioned in the Trust Deed and the Clifton Club did not acquire its interest until the subsequent Club Deed.

{¶54} Thus, briefly shifting our attention to the question posed by appellants regarding the scope of the rights conveyed to Members via the Club Deed, we agree with appellants that the Land Company could confer no greater rights to the Clifton Club than it possessed at the time of issuance of the Club Deed. The Trust had already been created and control over the Beach relinquished. Further, there are no terms in the Trust Deed expressly reserving authority to expand rights under the Trust post-creation:

> For trusts created before January 1, 2007, the rule is that "after the grantor has completed the creation of a trust, she is without rights, liabilities, or powers over the trust unless expressly provided for by the trust agreement."

*Minnesota Life Ins. Co. v. Cole*, N.D.Ohio No. 1:12-CV-00509, 2013 U.S. Dist. LEXIS 62928, *10 (May 2, 2013), quoting *Lourdes College v. Bishop*, 94 Ohio Misc.2d 51, 703 N.E.2d 362 (C.P.) citing 1 Bogert, *Trusts and Trustees* 431, Section 42 (2 Ed.Rev.1984); R.C. 5806.02.

{¶55} The Trust Deed "transfers only those rights which a grantor has at the time of the conveyance." *Finomore v. Epstein*, 18 Ohio App.3d 88, 90, 481 N.E.2d 1193 (8th Dist.1984), citing *Jonke v. Rubin*, 170 Ohio St. 41, 162 N.E.2d 116 (1995), at paragraph one of the syllabus. *See also Alston v. Alston*, 4 Ohio App.2d 270, 276, 212 N.E.2d 65 (10th Dist.1964):

In 26 Corpus Juris Secundum 946, Deeds, Section 118, it is said: "The title to real property may be as effectually conveyed or transferred by a quitclaim deed as by a warranty deed or any other form of conveyance. Such a deed will convey whatever title or interest the grantor may have in the land at the time it is given * * *."

*Id.* at 276.

**{¶56}** In further assessing the Club Members' legal status in 1912 as it relates to the settlors' intent, we examine the nature of the Clifton Club as a corporate legal entity holding title to the lots:

The idea that a corporation is a legal entity separate and distinct from its members is an accepted principle of law. As stated by the United States Supreme Court in *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 121 S.Ct. 2087, 150 L.Ed.2d 198 (2001), a corporation and an employee "are different 'persons,' even where the employee is the corporation's sole owner." *Id*. at 163. The court reasoned that this construction is appropriate because the "basic purpose" of incorporation is to create a "distinct legal entity, with legal rights, obligations, powers, and privileges different from those of the natural individuals who created it, who own it, or whom it employs." *Id.* The Ohio Supreme Court also agrees with this proposition. See *Agley v. Tracy*, 87 Ohio St.3d 265, 268, 719 N.E.2d 951 (1999) ("A corporation is an entity separate and apart from the individuals who compose it; it is a legal fiction for the purpose of doing business.")

(Emphasis omitted.) *Kiddie Co. Enrichment Ctr. v. Cuyahoga Cty. Bd. of Revision*, 2012-Ohio-5717, 984 N.E.2d 347, ¶ 13 (8th Dist.). *See also Boedeker v. Rogers*, 140 Ohio App.3d 11, 746 N.E.2d 625 (8th Dist.2000) (a shareholder's right to pursue an action addressing a wrong to the corporate entity was invented in equity as a representative action; and the shareholder, a nominal party, has no right, title, or interest in the claim itself.) *Id*. at 20.

**{¶57}** While this describes the derivative nature of a shareholder's interest, the members were not shareholders. *Id.* "A member of an incorporated club * * * does not have any title to any of the [club] property." *Reynolds v. Surf Club*, 473 So.2d 1327, 1334 (Fla.App.1985). "This is an incorporated club and title to the property is in the corporation and not in the membership." *Id.* at 1334, citing 14 C.J.S. Clubs Section 4, p. 1280, 1281. *See also Hardy v. Hardy*, 2d Dist. Montgomery No. 22964, 2010-Ohio-561, ¶ 11 (club memberships are intangible assets, typically nontransferable, illiquid, and lack fair market value).

**{¶58}** In discerning the settlors' intent, we find that the Club Members are not defined Beneficiaries under the Trust Deed and were vested with no legal rights thereunder. However, it is clear by the terms of the Trust Deed that the Clifton Club's rights as a Beneficiary are also to be protected, to the extent they comport with the settlors' intent that the conveyance was "for the sole use and benefit of all of the owners of sublots, or parts of lots, in the Clifton Park Allotment." Therefore, we determine that extrinsic evidence is required to determine the settlor's intent regarding the scope of the Clifton Club's use of the Beach, including the Trustees' historical interpretation and administration of the rights accordingly.

**{¶59}** The Club Lease capped Clifton Club membership at 250 Club Members. The Club Lease, Trust Deed, and Club Deed indicate an intent that the Clifton Club, as

lessees and successor lot owners, have access to the Beach, but that such access was subject to the rules and regulations implemented by the Trustees.

{¶60}  Records prior to 1942 were destroyed in a fire at the Clifton Club. However, subsequent Clifton Club and Trustee meeting minutes confirm that the Trustees made an annual determination on the amount that the Clifton Club was to pay to allow the members access to the Beach.   Various formulas were implemented.

{¶61} Over the years, the meeting minutes of the Trustees as well as the Clifton Club's board of directors document the understanding that use of the Beach by the Club Members was regulated by the Trustees.   On June 29, 1942, the Clifton Club unanimously adopted a resolution designating a committee to investigate the legal authority and right of the Trustees to enter into an agreement with the Clifton Club regulating use of the Beach by the Club Members, and to advise the Trustees that the Clifton Club "authorized a call to each member * * * for one quarter of the annual dues" to be paid to the Trustees for "full use of all facilities of the beach in common with, and to the same extent as lot owners in Clifton Park."

{¶62}  At the July 8, 1942 Clifton Club board meeting, the Clifton Club committee read for the record a letter to the Clifton Club from the Trustees acknowledging the acceptance of the Clifton Club's proposal to the Trustees for payment by the Club Members to access the Beach. The minutes further reflect that:

> The letter expressly stated that "neither this letter nor any action taken, or to be taken, hereunder shall impair or affect either your rights or the rights of

our beneficiaries or of us with respect to any of such questions, nor shall it or any such action constitute a precedent for a future year."

The call was approved by the Board.

**{¶63}** The Clifton Club determined at the August 7, 1947 meeting that, in 1948 and thereafter, it would pay the Trustees for operation and maintenance of the Beach:

> [A] certain share of the expenses incurred in the particular year in the operation and maintenance of said Beach: which share to be that fraction of the total of such expenses for the particular year that the number of Club members entitled to use the Beach bears to the total of (1) the number of such members, and (2) the number of sublots in Clifton Park.   * * *

> [S]uch arrangement shall continue unless the same shall be terminated or changed by the affirmative vote of a majority of either the stockholders or of the members of this Club present, in person or by proxy, at a meeting called for such purpose.

**{¶64}** The annual payments continued. A January 19, 1963 letter authored Trustee Clayton Quintrell, Esq., printed on his law firm's letterhead, is addressed to his fellow Trustees, and discusses the Club Members' access to the Beach. The Clifton Club suggested that the Club Members pay the Trustees directly for Beach access to avoid a 20 percent tax assessed upon Clifton Club dues.   In pertinent part, Quintrell opines:

> Even if the 20 percent tax could be avoided, the Trustees might be compelled to charge the Club members a 10 percent admissions tax. *The lot owners* of course pay no admissions tax because they *are using their own property.  Club members, as such do not have any property interest in the beach.*  For example, *they are not responsible for and have never contributed toward payment of the taxes upon the beach property.*  The resolution which was passed at the special meeting of the members and stockholders of the [Clifton] Club made it *perfectly clear that this was a permissive use afforded to the Club [M]embers*, terminable at any time by the Club [M]embers themselves upon short notice.

Consequently, even if the 20 percent could be avoided, a 10 percent admissions tax might be required to be collected and paid by the Trustees.

(Emphasis added.)

**{¶65}** Notes by Clifton Club director Smith memorialize a May 4, 1970 meeting between Clifton Club personnel and Trustees. At that meeting, Trustee Hartford stated the Club Members had no rights "under the land deed" and that the rights were reserved to the lot owners. The parties agree that the fee arrangement has been in place for the past 70 years, and that the Clifton Club has paid a mutually agreed upon annual maintenance assessment for the Beach at a higher rate than the formula set forth in the Trust Deed.

**{¶66}** Recitation of the foregoing events serves to confirm a historical understanding by the Trustees and Clifton Club that the Club Members' right to access the Beach is permissive, and that the Trustees have full authority to regulate Beach access. The Club Lease, capping the membership number subject to the settlors' consent, confirms that the Clifton Club's use, even as a direct Beneficiary, is not unfettered, particularly since the purpose of the Trust is to allow the lot owners to enjoy the Beach.

**{¶67}** We conclude that the trial court correctly determined that the Club Members have a "right" to use the Beach. However, in response to the declaration explicitly requested by appellants, we find that the Club Members have no legal right of

access as Beneficiaries. Access by the Club Members is by permission and regulation of the Trustees.

### B. Breach of Fiduciary Duties

**{¶68}** Appellants argue in their second assigned error that the trial court erred in denying their motion to remove the Trustees. It is asserted that the Trustees breached their fiduciary duties by advocating against the owner Beneficiaries on behalf of the Clifton Club and the Club Members, and denying appellants the right to access Trust documents upon reasonable request.

**{¶69}** It is axiomatic that a trustee has a fiduciary duty to a trust beneficiary. R.C. 5808.02 (a "trustee shall administer the trust solely in the interests of the beneficiaries"). "It is well settled that every violation by a trustee of a duty which equity lays upon him." *Shuster v. N. Am. Mtge. Loan Co.*, 139 Ohio St. 315, 343, 40 N.E.2d 130 (1942). This is true "whether [the violation] is wilful and fraudulent, or done through negligence, or arising through mere oversight or forgetfulness, is a breach of trust." *Id.*

**{¶70}** To prove a breach of fiduciary duty, appellants must demonstrate:

> (1) the existence of a duty arising from a fiduciary relationship; (2) a failure to observe the duty; and (3) an injury resulting proximately therefrom. * * * A "fiduciary" has been defined as a person having a duty, created by his undertaking, to act primarily for the benefit of another in matters connected with his undertaking.

(Citations and quotations omitted.) *Scanlon v. Scanlon*, 2013-Ohio-2694, 993 N.E.2d 855, ¶ 15 (8th Dist.), citing *Lombardo v. Mahoney*, 8th Dist. Cuyahoga No. 92608,

2009-Ohio-5826, ¶ 18; *Gracetech Inc. v. Perez*, 8th Dist. Cuyahoga No. 96913, 2012-Ohio-700. We find that appellants have demonstrated that a breach has taken place.

{¶71} While R.C. 5810.01 lists a range of remedies for breach of trust, appellants seek removal of the Trustees pursuant to R.C. 5807.06:

(A)     The settlor, a cotrustee, or a beneficiary may request the court to remove a trustee, or the court may remove a trustee on its own initiative.

(B)     The court may remove a trustee for any of the following reasons:

(1)     The trustee has committed a serious breach of trust;

(2)     Lack of cooperation among cotrustees substantially impairs the administration of the trust;

(3)     Because of unfitness, unwillingness, or persistent failure of the trustee to administer the trust effectively, the court determines that removal of the trustee best serves the interests of the beneficiaries.

(C)     Pending a final decision on a request to remove a trustee, or in lieu of or in addition to removing a trustee, the court may order any appropriate relief under division (B) of section 5810.01 of the Revised Code that is necessary to protect the trust property or the interests of the beneficiaries.

R.C. 5807.06.

{¶72} This court has held:

The removal of a trustee is generally considered a drastic action and the party seeking to remove a trustee must show a basis for removal by clear and convincing evidence. *Diemert v. Diemert,* 8th Dist. Cuyahoga No. 82597, 2003-Ohio-6496, ¶ 15-16. Further, "[t]he greater the grant of

discretion by the settlor to the trustee, the broader the range of permissible conduct by the trustee in exercising it."   R.C. 5808.14(A).

*Tomazic v. Rapoport,* 2012-Ohio-4402, 977 N.E.2d 1068, ¶ 33 (8th Dist.)

**{¶73}**   To prove a breach of fiduciary duty, appellants must demonstrate:

(1) the existence of a duty arising from a fiduciary relationship; (2) a failure to observe the duty; and (3) an injury resulting proximately therefrom.   * * * A "fiduciary" has been defined as a person having a duty, created by his undertaking, to act primarily for the benefit of another in matters connected with his undertaking.

 (Citations omitted.)   *Scanlon v. Scanlon*, 2013-Ohio-2694, 993 N.E.2d 855, ¶ 15 (8th Dist.), citing *Lombardo v. Mahoney*, 8th Dist. Cuyahoga No. 92608, 2009- Ohio-5826, ¶ 18; *Gracetech Inc.*, 8th Dist. Cuyahoga No. 96913, 2012-Ohio-700.

**{¶74}**   Appellants point out that:   (1) removal is proper for a serious breach of trust, or where removal serves the interests of the beneficiaries (R.C. 5807.06(B)(1) and (3), citing UTC Section 706); 5810.01(B)(7)); and that removal is particularly appropriate where the trustees engage in conduct detrimental to beneficiary interests.   *Id.* (Official Comment, UTC Section 706(b)), citing Restatement of the Law 3d, Trusts, Section 37, Comment d; Restatement of the Law 2d, Trusts, Section 107 (1959).

**{¶75}**   The fiduciary duties and powers of Trustees are enumerated in R.C. Chapter 5808.   Appellants focus on:   (1) breach of the duty of impartiality where there are two or more beneficiaries under R.C. 5808.03; (2) breach of the duty to keep beneficiaries reasonably informed about trust administration and material facts required to protect their interests under R.C. 5808.13; and (3) breach of the duty to promptly respond

to beneficiary's request for information regarding trust administration, unless unreasonable under the circumstances, also under R.C. 5808.13.

{¶76} We first analyze the claims regarding the Trustees' alleged breach of the cited fiduciary duties to determine the propriety of the remedy of removal.

### 1. Duty of Impartiality

{¶77} Trustees are charged to act impartially where there are multiple beneficiaries. R.C. 5808.03. The Official Comments provide further elucidation:

> The duty to act impartially does not mean that the trustee must treat the beneficiaries equally. Rather, the trustee must treat the beneficiaries equitably in light of the purposes and terms of the trust. A settlor who prefers that the trustee, when making decisions, generally favor the interests of one beneficiary over those of others should provide appropriate guidance in the terms of the trust. *See* Restatement of the Law 2d, Trusts, Section 183 (1959).

*Id.* (Official Comment, Uniform Trust Code Section 803).

{¶78} Appellants cite, in further support of their position, Restatement of the Law 3d, Trust, Section 79. "In managing real estate * * * held in the trust estate, impartiality is important in matters ranging from decisions concerning leasing to third parties or allowing one or more beneficiaries the use of Trust property." *Id.*

{¶79} Appellants state that, in 2011, the Clifton Club insisted that the Club Members are Trust Beneficiaries, regardless of lot ownership, and the Trustees changed their position to support the Clifton Club's interpretation. The current action was initiated after the Trustees refused to join appellants in an action against the Clifton Club, or to

petition for clarification by the court, regarding the legal rights of Club Members to use the Trust property. The Trustees filed an amicus brief supporting the Clifton Club's argument that the Trustees and lot owners were necessary parties to the suit. After joinder of the Trustees and lot owners, the Trustees advocated on behalf of the Clifton Club against the owner Beneficiaries, supporting the Clifton Club's interpretation of the Trust Deed. This behavior allegedly demonstrates a breach of the duty of impartiality. Pivotal documents to our analysis are discussed below.

### a. December 1, 2011 Correspondence from Clifton Club to Trustees

{¶80} In this correspondence, the Clifton Club comments on the "potentially catastrophic impact disparate restrictions levied against" Club Members would have on the Clifton Club's financial structure, as well as relationships between friends and neighbors. Expressing dismay that the new rules and "unilateral restrictions on the Clifton Club members" were already in the mail, the Clifton Club advises the Trustees:

> From our perspective, the proposed new restrictions unfairly discriminate against members of The Clifton Club. *As such, we believe the Park Trustees have breached their fiduciary responsibility to represent all Beach members fairly and without discrimination.* Even more alarming is the implied threat to engage in further discriminatory actions in the future if the Park Trustees deem it appropriate after what amounts to a 13-week trial run next summer. * * *

> Clearly, you gave preference to the input from a dissident group of Park residents, with only a portion of residents participating, should not have been sufficient to impose restrictions of the magnitude involved. * * *

Let me reiterate, in the Trust Deed under the heading "Duties of Trustees," the Trustees are obligated to carry out their role "for the common use of all the lot owners in the Clifton Park allotment." Not some owners, not just vocal and irritated lot owners, but "all" lot owners. * * *

[G]iven the importance and gravity of the issues involved, we must formally object to these rules and request that you consider other modifications between now and the 2012 beach season to address the issue of overcrowding without treating The Clifton Club unfairly.  As we have consistently communicated, we are ready, willing and able to work with you on a cooperative basis to deal with the underlying issues and are open to discussing all options, including a voluntary reduction of our membership.

### b.     Legal Memorandum of Clifton Club Beach Access

**{¶81}**  On May 9, 2012, the Trustees secured a legal analysis on the question of Club Members' access to the Beach, involving review of the Club Lease, Trust Deed, and Club Deed, seeking an assessment of the legal rights of Club Members to access the Beach. The analysis determined that the Clifton Club and its members "have rights to access the beach" pursuant to the Trust Deed and Club Deed, and that the historical use of the Beach supports the conclusion.

### c.     Trustees Notice to Clifton Park Owners and Club Members

**{¶82}**     The notice issued by the Trustees to Clifton Park residents and Club Members references an April 19, 2013 letter issued to the residents by the appellants. The appellants' letter advises residents that the declaratory judgment action is still pending, but that the court requires that all owners and the Trustees be added as parties to the case.

**{¶83}** The Trustees' notice states the 2012 Beach rules had been effective at alleviating overcrowding, but the appellants continue to pursue the lawsuit. While appellants' letter states the lot owners are not required to file a response to the suit, the Trustees' notice advises the lot owners that they have a duty to respond to the summons and complaint by law, and suggests that each owner seek legal counsel for advice. The notice also provides:

> A ruling in favor of the plaintiffs could cause a substantial and significant increase in the lot owners' assessments if the Clifton Club were to be banned from having beach access and the Clifton Club discontinued its substantial contribution to the Trust annual expenses.

**{¶84}** The Trustees also explain that they "have not chosen sides in this matter," and that they petitioned the court to include them as a party because of their fiduciary duty to administer the Beach. Notice recipients were referred to the Trustees' website for additional information in the form of "FAQs."[6]

**{¶85}** Excerpts from the FAQ are also contained in the notice:

1. *Beneficiaries.* The beneficiaries of the Clifton Park Trust are the owners of the lots in Clifton Park. Clifton Club is a lot owner and thus is a beneficiary.

2. *Access and Use.* Annually before the beginning of the summer season the Trustees publish and distribute to the beneficiaries "Clifton Beach Rules" that regulate access to and use of the beach and its facilities. As an example, for 2012 the Trustees established new rules for behavior at and access to the beach in response to issues raised by beneficiaries about overcrowding.

---

[6] Clifton Park Trustees (www.cliftonparktrustees.org) (accessed 08/02/2016).

3. *Control.* The Clifton Park Trustees control access to the privately-owned Beach by maintaining security guards at the entrance to the beach to check visitors and issuing a limited number of vehicle stickers to lot owners and permitted Club Members.

4. *Club Members.* The Clifton Club, which owns four lots, is a beneficiary of the Trust. The 1902 lease of the lots to the Clifton Club and the 1912 deed conveying title to the lots to the Clifton Club provides the Clifton Club with beach access rights that they have been exercising for over one hundred years. In recognition of this right, the Clifton Club annually contributes a significant amount of money to the Trust for its operations.

5. *Limit of Club Members.* The Trustees establish the number of Club Members who can access the beach. For the 2012 season the Trustees limited the Clifton Club beach access to 224 members (the Clifton Club has more than 224 members but only 224 were permitted to have beach access). Even if the number of Club Members grew to an "unlimited" number, the Trustees can and will reasonably limit the number of Club Members with beach access.

{¶86} The notice concludes that the current Beach access protocol comports with historical practices and the Trust Deed. Finally, the Trustees explain that they began their amicus brief, filed in response to the declaratory complaint, with the phrase, "[t]his dispute does not belong in court," stating they believe the historical methodology continues to work.

{¶87} Cases cited by appellants generally hold that "in a dispute between two parties claiming to be beneficiaries, a trustee may not advocate for either side or assume the validity of either side's position." *Matter of Duke,* 702 A.2d 1008, 1024 (NJ. Super. 1995); *In re Cudahy,* 131 N.W.2d 882 (Wis. 965)*; N. Trust Co. v. Heuer*, 560 N.E.2d 961 (Ill.App. 1990); *Shelton v. Tamposi*, 62 A.3d 741 (N.H. 2013); and *State ex rel. Strykowski v. Wilkie*, 261 N.W.2d 434 (Wis.1978). R.C. 5808.03, UTC 803.

**{¶88}** Appellees renounce appellants' cases and position, claiming that the Trustees "did not 'take sides' in a 'dispute between beneficiaries.'" The Trustees posit that they lawfully opposed an action seeking to "override" or "circumvent" the express terms of the Trust Deed, which the Trustees have a legal duty to defend and uphold, citing to Bogert, *The Law of Trusts and Trustees*, Section 581 (3d Ed.):

> Equity imposes upon the trustee the duty of defending the integrity of the trust, if he has reasonable ground for believing the attack is unjustified or if he is reasonably in doubt on that subject.

**{¶89}** Appellees further cite R.C. 5808.16(N) for the premise that the trustees have a statutory duty to contest any claim against the Trust. Here, they state the Trustees had a statutory duty to resist appellants' demand that:

> [T]he Trustees cease "establishing regulations" for the usage of the Beach and allow the Trust to be governed instead by new "regulations" written by a small group of beneficiaries (the six Plaintiffs and their allies), or by a court. In short, under the law, the Trustees could not "stand neutral" in the face of Plaintiffs' attack on those provisions of the Trust.

Brief of Trustees, p. 26.

**{¶90}** Appellees present *In re Estate of Dawson*, 117 Ohio App.3d 51, 689 N.E.2d 1008 (2d Dist.1996), as an analogy to the Trustees' obligations in this case:

> We agree that in general a fiduciary should remain neutral in disputes between beneficiaries. However, where, as here, the testamentary purposes of the decedent are manifest in a validly executed will, the fiduciary has a responsibility to make reasonable efforts to carry out those purposes.

*Id.* at 59. Distilled, *Dawson* is instructive, but not determinative.

**{¶91}** *Dawson* involves the denial of attorney fees to an attorney hired by the executrix, a co-beneficiary of the probate estate, to defend the estate against a breach of contract claim filed by two beneficiaries. *Id*. at 53. The trial court denied the fees, holding that the hiring of the attorney was an improper charge, adverse to the estate and for the benefit of the executrix. *Id*.

**{¶92}** *Dawson* quotes *In re Estate of Zonas*, 42 Ohio St.3d 8, 536 N.E.2d 642 (1989), to support the conclusion that, "although a fiduciary has no duty to defend, he may nonetheless undertake to do so." *Dawson,* 117 Ohio App.3d 51, 59, 689 N.E.2d 1008. However, the *Zonas* quotation provides *in toto*:

> Although [an executor] may defend the will, he is not required to do so and may cast the defense burden onto the legatees and devisees. *A fiduciary represents the entire estate and has the duty to distribute the estate property but should not enter into controversies among rival contestants. Doty* [*v. Peters*, 106 Ohio App. 435, 440, 155 N.E.2d 239 (12th Dist.1958)].

(Emphasis added.) *Id.* at ¶ 12. *See also Nolan v. Hinzey*, 2016-Ohio-4657, 55 N.E.3d 1158, ¶ 36 (7th Dist.), citing *Zonas* and *Dawson* for the premise that a fiduciary is not *required* to defend, but also observing that the fiduciary's duty in such an action is to preserve and protect the property of the estate, not to become involved in controversies between beneficiaries.

**{¶93}** Thus, while *Dawson* to some degree also supports appellants' position in this case, we observe that the exculpatory provisions of R.C. 5810.06 must also be considered:

> A trustee who acts in reasonable reliance on the terms of the trust as expressed in the trust instrument is not liable to a beneficiary for a breach of trust to the extent the breach resulted from the reliance. *Id*.

**{¶94}** In *Damas v. Damas*, 6th Dist. Lucas No. L-10-1125, 2011-Ohio-6311, the question was whether a successor trustee ("ST") violated his fiduciary duty of impartiality (R.C. 5808.03). The ST petitioned the court to approve distribution of residual estate assets involving securities. The ST was also an owner of a company that received a portion of the distribution. *Id*. at ¶ 21-22.

**{¶95}** The court turned its attention to the impartiality analysis under R.C. 5808.03. *Id*. at ¶ 28. Upon review of the terms of the trust and intent of the settlor, the court held that there was no breach, because the "trustee acted within the express authority granted by the settlor." *Id*. That finding, the court stated, was supported by R.C. 5810.06, providing that acting in reasonable reliance of the trust terms negates liability for a fiduciary breach. *Id.* at ¶ 29.

**{¶96}** The Trustees deny taking sides in the dispute, positing they acted only to perform their fiduciary duty to protect the Trust property. *See* R.C. 5808.16(Y) (duty to protect Trust). It is beyond dispute that the Trustees are subject to a duty of impartiality, and that the cited evidence may be construed as a breach of that duty.

**{¶97}** In 2011, the Trustees were aware that the Beneficiaries were disturbed about overcrowding of the Beach, and several meetings were held with some of the Beneficiaries, including appellants, to discuss the problem. The question arose as to whether the Trustees had the legal right to regulate the Clifton Club's use of the Beach. Also in December 2011, the Clifton Club took issue with the Beach Rules circulated by the Trustees. The Clifton Club asserted that the rules disproportionately benefitted the vocal lot owner Beneficiaries and detrimentally impacted the Clifton Club. The Clifton Club also stated the rules constituted a breach of the Trustees' fiduciary duties, but said they were willing to work with the Trustees to resolve the situation.

**{¶98}** At the time of the 2011-2012 over-crowding issue, the Trustees were aware that the interests of the Clifton Club and lot owner Beneficiaries were in conflict. According to the Trustees' website, a printout of which is in the record, the Trustees "were compelled to seek counsel of attorneys" when "some residents threatened to legally challenge the 100 year practices of the Trustees with respect to the relationship with the Clifton Club." On May 9, 2012, a legal memorandum was issued to the Trustees opining that the Clifton Club and Club Members have the "legal right to access" the Beach.

**{¶99}** Appellants' request to see the legal memorandum was denied by the Trustees. The Trustees also refused to seek a judicial interpretation of the Trust rights, resulting in the filing of the instant action on June 2, 2012.

{¶100} The Trustees' amicus brief was filed in support of the Clifton Club's motion to dismiss.[7] The Trustees argued: (1) they were necessary parties as title owners to the Beach; and (2) as fiduciaries of the Trust, and pursuant to the express terms thereof, they were charged with the duty to hold the Beach for "the use and benefit of all of the owners." R.C. 5808.09,[8] 5808.01,[9] and 5808.11.[10]

{¶101} The Trustees proffer that there is no ambiguity in the Trust Deed that the declaratory matter was moot because recent regulations had alleviated the Beach crowding issue. "For over 100 years it has been clear pursuant to the 'Trust Deed'" that all lot owners, including the Clifton Club, have a right to use the Beach, and that "this includes the members of the" Clifton Club.

{¶102} The Trustees' position has supported that of the Clifton Club, though assertedly offered to protect the Beach. There is also the issuance of the 2013 letter to residents and Club Members addressing the notice circulated by appellants emphasizing that the Club Members had the right to access the Beach per the Trust Deed.

---

[7] Appellants opposed the Trustees' motion, refuting that the Trustees were necessary parties and arguing that the proper vehicle for intervention was via Civ.R. 24(a)(2) motion to intervene. However, the trial court granted the motion, joining the Trustees as a party.

[8] A Trustee shall take reasonable steps to take control of and protect the trust property.

[9] A Trustee shall administer the trust in good faith, in accordance with its terms and purposes and the interests of the beneficiaries.

[10] A Trustee shall take reasonable steps to enforce claims of the trust and to defend claims against the trust.

{¶103} At this point, the Trustees arguably crossed the fine line between the duty to defend the Trust and the duty of impartiality as between beneficiaries. At the time appellants requested that the Trustees file an action to declare the legal rights to Beach access, the Trustees could have petitioned the court for direction regarding interpretation of the Trust Deed pursuant to R.C. 5802.01, UTC 201. *See*, *e.g., N. Trust Co. v. Heuer*, 202 Ill.App.3d 1066, 560 N.E.2d 961, 148 Ill.Dec. 364 (Ill.App. 1 Dist.1990) (trustee properly sought court's construction of trust agreement regarding appropriate distribution; however, in arguing that the trust should be interpreted in a manner beneficial to one beneficiary versus the other, it exceeded its role as trustee and breached its duty of impartiality).

{¶104} We find that the Trustees breached the duty of impartiality in this case by engaging in advocacy between the beneficiaries.

### C. Duty to Inform, Report, and Promptly Respond

{¶105} Appellants base this argument on the Trustees' failure to provide requested information prior to inception of this case, as well as during discovery, and to notify the owner beneficiaries of the Clifton Club's 2012 correspondence to the Trustees indicating that the Trustees had breached their fiduciary duty. Appellants also assert that the Trustees' failure to fulfill the duty to inform is another indicator of the breach of impartiality.

{¶106}    R.C. 5808.13, UTC 813, provides in pertinent part:

(A)    A trustee shall keep the current beneficiaries of the trust reasonably informed about the administration of the trust and of the material facts necessary for them to protect their interests. Unless unreasonable under the circumstances, a trustee shall promptly respond to a beneficiary's request for information related to the administration of the trust.

(B)    A trustee shall do all of the following:

       (1)    Upon the request of a beneficiary, promptly furnish to the beneficiary a copy of the trust instrument.

{¶107}   The appellants state that the Trustees failed to notify them of the Clifton Club's letter alleging a breach of fiduciary duty, and containing statements about the Trustees responding in favor of the vocal group of "dissidents" (i.e., appellants) who were being appeased by the actions.  It is argued that notice should have been provided to appellants and the other Beneficiaries pursuant to R.C. 5808.13(A).  According to the Official Comment, the duty to notify:

[M]ay include a duty to communicate to a qualified beneficiary information about the administration of the trust that is reasonably necessary to enable the beneficiary to enforce the beneficiary's rights and to prevent or redress a breach of trust.   * * *

Performance is excused only if compliance is unreasonable under the circumstances. Within the bounds of the reasonableness limit, this provision allows the beneficiary to determine what information is relevant to protect the beneficiary's interest.

{¶108}   Appellants reference an exhibit attached to their reply to the motion to remove the Trustees. The email, authored by co-appellant Butler, is dated February 14, 2012. Butler thanks the Trustees for a February 2, 2012 meeting and their February 7,

2012 follow-up email. Butler's email states that "[w]e are still in the planning states and want to responsibly seek judicial relief for a long standing controversy that needs clarification and interpretation." The email also requests "access to the trustee's records in a way that will not delay their being digitized."

{¶109} Butler's email also references a request to conduct a discussion with the Trustees and their counsel as "a positive step," and concludes with the statement that the request is presented pursuant to R.C. 5808.13(A). Appellants state the Trustees refused the requests. Additional documents were requested during the litigation, some of which the trial court required to be delivered in response to appellants' motion to compel.

{¶110} Trustees are required to respond to a beneficiary's information request as it relates to the administration of a trust. *Zimmerman v. Patricia E. Zirpolo Trust*, 5th Dist. Stark No. 2011CA00142, 2012-Ohio-346, ¶ 22 ("Once the requirements of R.C. 5808.13 were satisfied, the Trustee had a duty to provide the requested documents to the beneficiaries.").

{¶111} In Alan Newman, George G. Bogert & George T. Bogert, *The Law of Trusts & Trustees*, Section 962 (3d Ed.2010), the purpose of the fiduciary's duty to disclose is explained:

> A beneficiary of a trust is the equitable owner of the trust property, in whole or in part. The trustee, although holding legal title, is a fiduciary whose function is to manage the trust property for the beneficiary's benefit in accordance with the terms of the trust and applicable law. The fact that the settlor has created a trust, and thus required that the beneficiary enjoy the property interest indirectly, does not imply that the beneficiary is to be kept

in ignorance of the trust, the beneficiary's interest in the trust, the nature of the trust property, and the details of the trustee's administration of that property. For the beneficiary to be able to hold the trustee accountable for its administration of the trust, the beneficiary must know of the trust, the beneficiary's interest in it, its property, and how that property is being managed.

*Id.*

{¶112}  According to Scott on *Trusts*, Section 173, each beneficiary is  entitled to know the status of the property, and how the trustee is administering the trust.  " Trustees and executors owe beneficiaries a fiduciary duty of full disclosure of all material facts known to them that might affect [the

beneficiaries'] rights.  *Montgomery v. Kennedy*, 669 S.W.2d 309, 313 (Tex. 1984)."

*Huie v. DeShazo*, 922 S.W.2d 920, 923 (Tex. 1996) (original proceeding).

{¶113}  Several documents were withheld by the Trustees under a claim of attorney-client privilege. The question of when, if ever, a trustee's claim of attorney-client privilege is justifiable to withhold documents has spawned two lines of cases, as explained in the Comments to R.C. 5808.13, UTC 813:

> The courts are split because of the important values that are in tension on this question.  "The [attorney-client] privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client."  *Upjohn Co. v. United States*, 449 U.S. 383 (1981).  On the other hand, subsection (a) of this section requires that a trustee keep the qualified beneficiaries reasonably informed about the administration of the trust and of the material facts necessary for them to protect their interests, which could include facts that the trustee has revealed only to the trustee's attorney. There is authority for the view that the trustee is estopped from pleading attorney-client privilege in such circumstances. In the leading case, *Riggs Natl. Bank v.*

*Zimmer*, 355 A.2d 709, 713 (Del. Ch. 1976), the court reasoned that the beneficiary, not the trustee, is the attorney's client: "As a representative for the beneficiaries of the trust which he is administering, the trustee is not the real client * * * ." This beneficiary-as-client theory has been criticized on the ground that it conflicts with the trustee's fiduciary duty to implement the intentions of the settlor, which are sometimes in tension with the wishes of one or more beneficiaries. See Louis H. Hamel, Jr., *Trustee's Privileged Counsel: A Rebuttal*, 21 ACTEC Notes 156 (1995); Charles F. Gibbs & Cindy D. Hanson, *The Fiduciary Exception to a Trustee's Attorney/Client Privilege*, 21 ACTEC Notes 236 (1995). Prominent decisions in California and Texas have refused to follow Delaware in recognizing an exception for the beneficiary against the trustee's attorney-client privilege. *Wells Fargo Bank v. Superior Court* (Boltwood), 990 P.2d 591 (Cal. 2000); *Huie v. De Shazo*, 922 S.W. 2d 920 (Tex. 1996). The beneficiary-as-client theory continues to be applied to ERISA trusts. *See, e.g.*, *United States v. Mett,* 178 F.3d 1058, 1062-64 (9th Cir. 1999). However, in a pension trust the beneficiaries are the settlors of their own trust because the trust is funded with their own earnings. Accordingly, in ERISA attorney-client cases "[t]here are no competing interests such as other stockholders or the intentions of the Settlor." *Gibbs & Hanson*, 21 ACTEC Notes at 238.

*Id.*

**{¶114}** The issue of attorney-client privilege in trust relationships was more recently addressed by the United States Supreme Court in *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 131 S.Ct. 2313 (2011). The Apache nation sued the government for mismanagement of tribal funds. *Id.* at 165. The nation argued that the government held the funds in trust, alleging breach of fiduciary duty. *Id.*

**{¶115}** During discovery, the nation requested documents, but the trustee asserted attorney-client privilege. The nation responded that the documents should be produced under the fiduciary privilege exception to the attorney-client privilege rule. *Id.* at 165-166.

{¶116} The court provided a comprehensive analysis of the fiduciary privilege issue. During the 19ᵗʰ century, the courts of England implemented the fiduciary exception to trust law, adopted by the American courts beginning in the 1970s:

> The rule was that when a trustee obtained legal advice to guide the administration of the trust, and not for the trustee's own defense in litigation, the beneficiaries were entitled to the production of documents related to that advice. (Citations omitted.) The courts reasoned that the normal attorney-client privilege did not apply in this situation because the legal advice was sought for the beneficiaries' benefit and was obtained at the beneficiaries' expense by using trust funds to pay the attorney fees. * * *

*Id.* at 170.

{¶117} The court cited *Riggs Natl. Bank of Washington, D. C. v. Zimmer*, 355 A.2d 709 (Del.Ch.1976), as "the leading American case" (*id.* at 170), recognizing that the dual criteria applied in *Riggs* is also used by federal appellate courts to determine application of the fiduciary exception:

> [T[he beneficiaries of a trust estate [*in Riggs*] sought to compel the trustees to reimburse the estate for alleged breaches of trust. The beneficiaries moved to compel the trustees to produce a legal memorandum related to the administration of the trust that the trustees withheld on the basis of attorney-client privilege. The Delaware Chancery Court, observing that "American case law is practically nonexistent on the duty of a trustee in this context," looked to the English cases. *Id*. at 712. Applying the common-law fiduciary exception, the court held that the memorandum was discoverable.

*Jicarilla* at 171.

{¶118} The *Jicarilla* court explained *Riggs* two-pronged analysis in determining application of the fiduciary exception. The inquirer first looks to the capacity in which the trustees served when the legal advice was

requested: First, the court explained, the trustees had obtained the legal advice as "mere representative[s]" of the beneficiaries because the trustees had a fiduciary obligation to act in the beneficiaries' interest when administering the trust. *Ibid.* For that reason, the beneficiaries were the "real clients" of the attorney who had advised the trustee on trust-related matters, and therefore the attorney-client privilege properly belonged to the beneficiaries rather than the trustees. *Id.* at 711-712. The court based its "real client" determination on several factors: (1) When the advice was sought, no adversarial proceedings between the trustees and beneficiaries had been pending, and therefore there was no reason for the trustees to seek legal advice in a personal rather than a fiduciary capacity; (2) the court saw no indication that the memorandum was intended for any purpose other than to benefit the trust; and (3) the law firm had been paid out of trust assets. That the advice was obtained at the beneficiaries' expense was not only a "significant factor" entitling the beneficiaries to see the document but also "a strong indication of precisely who the real clients were." *Id.* at 712. The court distinguished between "legal advice procured at the trustee's own expense and for his own protection," which would remain privileged, "and the situation where the trust itself is assessed for obtaining opinions of counsel where interests of the beneficiaries are presently at stake." *Ibid.* In the latter case, the fiduciary exception applied, and the trustees could not withhold those attorney-client communications from the beneficiaries.

*Jicarilla* at 172.

{¶119} Next, *Jicarilla* addressed the second prong of *Riggs*'s analysis that balanced the interests of the parties:

Second, the court concluded that the trustees' fiduciary duty to furnish trust-related information to the beneficiaries outweighed their interest in the attorney-client privilege. "The policy of preserving the full disclosure necessary in the trustee-beneficiary relationship," the court explained, "is here ultimately more important than the protection of the trustees' confidence in the attorney for the trust." *Id.* at 714. Because more information helped the beneficiaries to police the trustees' management of the trust, disclosure was, in the court's judgment, "a weightier public policy than the preservation of confidential attorney-client communications." *Ibid.*

*Jicarilla* at 172-173.

{¶120} We find that the Trustees' refusal to provide Trust documents prior to the litigation, and during, constitutes a breach of R.C. 5808.13. The "real client" in securing the information was the Beneficiaries. *Jicarilla* at 171, citing *Riggs* at 712. The breaches occurring prior to suit, necessitated the pursuit of legal resolution. Breaches occurring during the litigation impeded equal access to necessary information for an equitable resolution, thus causing injury. The preservation of full disclosure in a trustee beneficiary relationship is of utmost importance. *Jicarilla* at 172, citing *Riggs* at 714.

### D. Remedy for Breach of Fiduciary Duties

{¶121} Based on a thorough review of the record, we find that the Trustees have breached the duties of impartiality and to inform and report, pursuant to R.C. 5808.03 and 5808.13, respectively. However, we do not agree that the acts of the Trustees were so unreasonable and egregious that removal is required. *Rapoport,* 2012-Ohio-4402, 977 N.E. 2d 1068, ¶ 33 ("removal of a trustee is generally considered a drastic action.")

{¶122} R.C. 5810.01, UTC 1001, delineates the range of remedies available for a breach of trust where removal is not deemed appropriate:

(1)    Compel the trustee to perform the trustee's duties;

(2)    Enjoin the trustee from committing a breach of trust;

(3)    Compel the trustee to redress a breach of trust by paying money, restoring property, or other means;

(4)    Order a trustee to account;

(5)     Appoint a special fiduciary to take possession of the trust property and administer the trust;

(6)     Suspend the trustee;

(7)     Remove the trustee as provided in section 5807.06 of the Revised Code;

(8)     Reduce or deny compensation to the trustee;

(9)     Subject to section 5810.12 of the Revised Code, void an act of the trustee, impose a lien or a constructive trust on trust property, or trace trust property wrongfully disposed of and recover the property or its proceeds; and

(10)    Order any other appropriate relief.

**{¶123}** Taking into consideration the history of the parties and the need to move forward in the best interests of the Trust and Beneficiaries, we find that the appropriate remedy in this case is that the Trustees compensate appellants for the reasonable costs of appellants' attorney fees, costs, and expenses. R.C. 5810.01(B)(3) and 5810.01(B)(10). *See also* R.C. 5810.04, which   allows for the award of reasonable attorney fees, costs and expenses in judicial proceedings regarding a trust. *Jakubs v. Borally*, 8th Dist. Cuyahoga No. 101756, 2015-Ohio-2696, ¶ 10, citing the official comment to R.C. 5810.04.

**{¶124}** As R.C. 5810.04 prescribes,

[T]he court, as justice and equity may require, may award costs, expenses, and reasonable attorney fees to any party, to be paid by another party, from the trust that is the subject of the controversy, or from a party's interest in the trust that is the subject of the controversy.

In this case, we find that justice and equity requires that the Trustees, for breach of the cited fiduciary duties, pay to appellants the reasonable costs, expenses, and attorney fees for this action in an amount to be determined at a evidentiary hearing conducted by the trial court.

## III.    CONCLUSION

{¶125}    We determine that the lot owners are the sole legal beneficiaries of the Trust.   The Clifton Club is a lot owner and thus a beneficiary.   The Trust Deed is the sole conveyor of legal rights to the beneficiaries.   The Club Deed transferred title to the Club Lots.   The Club Deed did not, and could not, convey any greater rights to the Trust property than those that are set forth in the Trust Deed, because title to, and control of, the Trust property was vested solely in the Trustees via the Trust Deed.

{¶126}   The Club Members are not equal or direct Beneficiaries of the Trust. The Club Members' have a permissive right to access the Beach as regulated by the Trustees pursuant to the Trust Deed.

{¶127}   The Trustees breached the duties of impartiality, and to inform and report to appellants as Beneficiaries. The Trustees are ordered to compensate the appellants for reasonable attorney fees, costs, and expenses.

{¶128}   This case is reversed and remanded to the trial court to enter judgment for appellants in accordance with this court's findings, and to conduct an evidentiary hearing to determine the reasonable amount of attorney fees, costs, and expenses.

It is ordered that appellants recover from appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

MARY J. BOYLE, J., CONCURS;
EILEEN T. GALLAGHER, P.J., DISSENTS WITH SEPARATE OPINION

EILEEN T. GALLAGHER, P.J., DISSENTING:

{¶129}   I concur with the majority's resolution of appellant's first assignment of error.   I respectfully dissent, however, from the majority's finding in appellant's second assignment of error that the Trustees breached their duty of impartiality.   I further dissent from the majority's conclusion that appellants are entitled to reasonable attorney fees, costs, and expenses as a result of the Trustees alleged breach of their duty to "promptly respond to a beneficiaries request for information related to the administration of the trust."

{¶130} Regarding the merits of appellant's declaratory judgment action, I agree with the majority's finding that the Club Members are not beneficiaries under the Trust

Deed and, therefore, have no legal right to access the subject beach. Logically, the trial court raised several persuasive arguments concerning the nature of the Clifton Club and its relationship with its members. As the court stated,

> It is illogical to reason that the [Clifton] Club, as a lot owner, has a right to use common land deeded to it, but that its members would not also have this privilege. What is a club without its members? A building, a simple structure, cannot enjoy a beach. People can. And for what reason would someone be a Club [M]ember if they could not enjoy the legal benefits provided to the [Clifton] Club; in fact, that is the only reason a person would become a member.

{¶131} However, while I recognize the trial court's position, our independent review of the relevant trust and the express language used therein requires us to find to the contrary. The trust simply does not contain any language from which this court can reasonably conclude that the members of the Clifton Club share the same legal rights as the Clifton Club itself. Accordingly, the trial court erred in awarding summary judgment in favor of the appellees. It is my hope that, on remand, the parties negotiate a fair and equitable agreement that would grant members of the Clifton Club access to the beach on a permissive basis.

{¶132} With respect to appellant's motion to remove the trustees, I respectfully dissent from the majority's conclusion that the Trustees breached their duty of impartiality by "taking sides" with the Clifton Club throughout this case. In my view, the Trustees' actions were not predicated on the "taking of sides," but were motivated by their obligation to defend and uphold the purpose of the Trust Deed in accordance with the

information and legal opinions they had in front of them at the time this action was initiated.

{¶133} Nevertheless, even if the Trustees were operating in good faith, they were not relieved of their duty to inform, report, and promptly respond pursuant to R.C. 5808.13. With that said, I concede that the evidence submitted in this matter demonstrates that the Trustees may have breached their fiduciary duty to promptly respond by initially denying appellants' access to certain trust-related information upon a reasonable request.

{¶134} From this record, however, it is difficult to determine the extent to which the Trustees' inaction harmed the appellants. The majority states that the Trustees conduct "impeded equal access to necessary information for an equitable resolution, thus causing injury." After careful consideration, I cannot say the Trustees' conduct in this case prevented an equitable resolution of this litigation.

{¶135} Here, the record reflects that the Trustees provided appellants with over 12,000 pages of copied Trust documents "via disc" in the course of discovery. To the extent appellants argue that the Trustees breached their fiduciary duties to the Beneficiaries by failing to grant access to materials that were alleged by the Trustees to be privileged, I note that this issue was adequately addressed and resolved by the trial court following appellant's April 2015 motion to compel discovery. The Trustees were ordered to produce the original trust documents for inspection and were required to produce three of the eight trust documents addressed in appellants' motion to compel. There is nothing

in this record to suggest the Trustees did not comply with the trial court's August 2015 discovery order. Moreover, appellants do not appeal from the trial court's order.

{¶136} In short, it is my belief that the appellants were furnished with the necessary information to protect their interests in this case — the precise goal of R.C. 5808.13. Under these circumstances, I do not believe the pillars of justice and equity require the Trustees to pay reasonable costs, expenses, and attorney fees.